**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **DRAGA CAIRONE,** | ) | |
| **Plaintiff** | ) | |
| | ) | **No. 17 cv 4247** |
| **v.** | ) | |
| | ) | **Hon. Robert Dow, presiding** |
| **McHENRY COUNTY COLLEGE,** | ) | **Magistrate Judge Young B. Kim** |
| **TALIA KORONKIEWICZ, in her official** | ) | |
| **and individual capacity as Manager of Student** | ) | |
| **Conduct and Campus Life,** | ) | |
| **McHENRY COUNTY COLLEGE** | ) | |
| **TONY MIKSA, in his official** | ) | |
| **and individual capacity as Vice President** | ) | |
| **of McHENRY COUNTY COLLEGE,** | ) | |
| **FLECIA THOMAS, in her official** | ) | |
| **and individual capacity as Dean of Student** | ) | |
| **Affairs, McHENRY COUNTY COLLEGE** | ) | |
| **JULETTA PATRICK, in her official** | ) | |
| **and individual capacity as Title IX Coordinator,** | ) | |
| **McHENRY COUNTY COLLEGE** | ) | |
| | ) | |
| . | ) | |
| **Defendants.** | ) | |
| | ) | |

## RESPONSE TO MOTION TO DISMISS

I.     INTRODUCTION

Draga Cairone sued the Defendants for due process violations under 42 U.S.C § 1983,

violations of Americans with Disabilities Act (ADA), 42 U.S.C § 12132, breach of contract

under Illinois law, and retaliation. The Defendants have moved to dismiss her Second Amended

Complaint (Complaint or Comp.) for failure to state a claim under Fed. R Civ. P. 12(b)(6), as

time-barred (the ADA claims), and as to the individual Defendants, on grounds of qualified

immunity or for failure to assert "specific and individualized" allegations against them. Ms. Cairone here responds to the Motion.

This is not a complicated case. Ms. Cairone's rights are clear and clearly established, and Defendant's violations are evident. They suspended her without notice (or in some cases meaningful notice) or an opportunity to be heard, and barred her from campus, depriving her of her contractually based rights to "peaceful pursuit of education and [] reasonable use of . . . services and facilities" (Student Code of Conduct (Code), Art 1 (2014-15 ed.), depriving her of *procedural* due process under the Fourteenth Amendment, and also breaching their contract with her. Defendants punished her for *sexual* harassment, a kind of discrimination, after finding she had not discriminated, and by finding she had committed plain a charge that did not exist except as a form of discrimination, violating *substantive* due process. They discriminated throughout against her on the basis of her disability, autism, in a cumulative and continuing manner that became apparent as events evolved, in violation of the ADA. These were all also contract violations. And they unlawfully retaliated against her for bringing this lawsuit by forbidding MCC faculty and staff from providing her with letters of support in unrelated proceeding at the University of Illinois.

## II.     STANDARD OF REVIEW

On a motion to dismiss "the complaint [is construed] in the light most favorable to the non-moving party and giving that party the benefit of reasonable inferences from those allegations. *Citadel Group Ltd. v. Washington Regional Medical Center*, 692 F.3d 580, 591 (7th Cir. 2012). "A complaint must contain only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2)." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012). A complaint must also contain allegations that "'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plaintiff must "provid[e] some specific facts" to support the legal claims asserted in the complaint. *Brooks*, 578 F.3d at 581. "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

III.    ARGUMENT

A.  Ms. Cairone Sufficiently Pleads Due Process Violations.

1.  Ms. Cairone had a Protected Property or Liberty Interest in Peaceful Pursuit of Education and Reasonable Use of College Services and Facilities based in the Code, as well as a Contractual Right to these Things.

To be entitled to due process, a plaintiff must have a liberty or property interest at stake. Protectible interests "are not created by the Constitution. Rather, they are created and their dimensions defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572-73 (1975). A person claiming deprivation of a protected interest "must have more than . . . have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "A 'legitimate claim of entitlement' is one that is legally enforceable—one based on statutes or regulations containing 'explicitly mandatory language' that links 'specified substantive predicates' to prescribed outcomes." *Miller v. Crystal Lake Park Dist.*, 47 F.3d 865, 867 (7th Cir. 1995) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463, (1989)).

In this case the property interests are created by contract, specifically the MCC Code appended to the Complaint.  The Defendants incorrectly assert that Ms. Cairone fails to point to

specific language in the contract, but in her Complaint at 2, she states that Art. I of the Code specifies consideration for performance: Students are "expected to behave appropriately. . . The College, *in turn*, respects the[ir] properly exercised rights *including* the "peaceful pursuit of education; and . . . the reasonable use of College services and facilities." *Id.* (emphasis added). This is an express and not an implied contract, contrary to what the Defendants claim (Mot. at 4). Ms. Cairone has identified "the exact promises made to the student and the promises the student made in return." *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993). MCC violated those interests by suspending her without meaningful notice and an opportunity to be heard, interrupting her education, and banning her from campus during the suspension, interfering with reasonable use of College services and facilities.

The Defendants also aver that the Code (despite this contractual language) cannot be a contract because it is a student disciplinary handbook. They cite, inappositely, a nonprecedential District Court case where the Court found that a particular student disciplinary handbook at a different institution did not make the promise in continued pursuit of education the plaintiff in that case alleged. *Mutter v. Madigan*, 17 F. Supp. 3d 752, 759 (N.D. Ill. 2014) (Plaintiff failed to point to "an identifiable contractual promise" by institution). The case does not stand for the proposition that such a handbook cannot be a contract, which the Seventh Circuit, interpreting Illinois law, has rejected. In Illinois, "a college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins." *Diperna v. Chi. Sch. of Prof'l Psychology*, 893 F.3d 1001 (7th Cir. 2018) (quoting *Raethz v. Aurora Univ.*, 346 Ill. App. 3d 728 (Ill. App. Ct. 2d Dist 2004)). Alternatively the Code may be treated, as state or (here) county law as Court does the handbooks in *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993). Either way, it creates the specified property interests. There

may be no "stand alone property interest in an education at a [public] university," *Charleston v. UIC*, 741 F.3d 769, 772 (7th Cir. 2013), but Ms. Cairone claims no such thing. She had a contractually based right to "peaceful pursuit of education" at MCC, as well as "the reasonable use of College services and facilities."

The Defendants further claim, irrelevantly, that a mere violation of college-created procedures does "not itself involve denial of federal constitutional due process, even if the state law confers a procedural right." *Id.* That is true, but Ms. Cairone does not claim any federal due process violation based on procedural rights conferred by the Code. She claims that the lack of notice and an opportunity to be heard, "the touchstones of [federal] procedural due process," *Simer v. Rios*, 661 F.2d 655, 667 (7th Cir. 1981), led to deprivation of her protected property and liberty interests. She does assert *state law breach of contract* claims, clearly specified as such, on the basis of breach of rights guaranteed her by the Code as a contract (Complaint, p. 3) or as law, but that is a different matter. See Section III.C below.

> 2. Ms. Cairone had a Protected Liberty Interest in Pursuit of Some Occupation of her Choice under *Roth* and *Davis*.

In addition to her claims of procedural due process violations --notice and an opportunity to be heard--leading to deprivations of specified property interests in peaceful pursuit of education and the reasonable use of College services and facilities, Ms. Cairone claims a due process violation of her liberty interests in pursuing "any occupation of her choice" (Complaint, p. 3). The Defendants reply misleading by citing *Sung Park v. Ind. Univ. Sch. of Dentistry,* for

the proposition that an "expelled dental student's interest in *pursuing career* 'is not one that the due process cause protects,'" 692 F.3d 828, 832 (7th Cir. 2012) (emphasis added) (Mot. p. 4).[1]

Lost in the elision between the italicized words is what that case actually says, that "there is no fundamental right to follow any *particular* career." *Id.* But Ms. Cairone does not claim deprivation of a right or ability to pursue any *particular* career," but "*any* occupation of her choice (not any *particular* occupation)" (Complaint, p. 2, emphasis in original). And this *is* a protected liberty interest.

In *Board of Regents v. Roth,* 408 U.S. 564 (1972), the Supreme Court held that the state may infringe a plaintiff's liberty interest when it makes a "charge against him that might seriously damage his standing and associations in his community" that places his "good name, reputation, honor, or integrity . . . at stake" or imposes on the plaintiff "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* at 573. Here the charge of harassment and punishment for sexual harassment have these effects. The Supreme Court has emphasized that, to implicate a liberty interest, such defamation must involve the alteration of a legal status, such as the loss of an employment position*, see Paul v. Davis,* 424 U.S. 693, 708-10 (1976). Here the change in legal status was being suspended and barred from the MCC campus.

> 3. Punishing Ms. Cairone for "Harassment," or Sexual "Harassment, when she was not found to have Discriminated Against Anyone because of Protected Group Membership Shocks the Conscience.

---

[1] Defendants cite to the District Court case , *Doe v. Purdue Univ.*, 281 F. Supp. 3d 754, 768 (N.D. Ind. 2017), for the proposition that "individuals have no constitutionally protected right to pursue a career, which is true only if that means a *particular* career.

MCC punished Ms. Cairone for something it found she had not done, that is, commit sexual harassment or indeed, harassment *at all* according to its own definition. MCC did not find that Ms. Cairone had not harassed or discriminated against anyone because of their sex or other membership in a protected group (Comp. at 2). However, she was punished for free-floating "harassment," *when the Code itself defined "discrimination or harassment" as conduct based on the victim's membership in a protected group* (Art VI, Sec. C).[2] In other words she was punished for an offense that did not exist, was not defined, or she was not found to have committed. In addition she was punished by being required to write an essay on *sexual* harassment describing what she could personally do to illustrate the negative effects of such harassment, and undergo a *sexual harassment* training (Comp. ¶ 23 at 10). The nature of the sanctions make it clear that she was disciplined for something she was not found to have done.

The Seventh Circuit states that "the nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides." *Miller v. Henman,* 804 F.2d 421, 427 (7th Cir. 1986). Rather than "guaranteeing an individual the right to a fair decision-making procedure, . . . substantive due process prevents the state from taking certain actions even if it provides procedural safeguards. It protects citizens against government conduct that is arbitrary or without reasonable justification." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005).

The Supreme Court has emphasized that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (police officer did not violate substantive due process rights of passenger killed in

---

[2] "When I use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less." Lewis Carroll, *Through the Looking Glass, in The Annotated Alice* (Martin Gardner, ed. 1970) (1871).

high speed chase). To allege a violation of her substantive due process rights, plaintiff must allege intentional (not merely negligent) conduct that "shocks the conscience" because it is "'unjustifiable by any governmental interest.'" *Remer v. Burlington Area School District*, 286 F.3d 1007, 1013 (7th Cir. 2002); *Lewis*, 523 U.S. at 836.

Federal courts, further, are not in the business of setting aside every erroneous decision made by school administrators. *Wood v. Strickland*, 420 U.S. 308, 326 (1975) (upholding the denial of relief for where plaintiffs were suspended for spiking the school punch with a negligible amount of alcohol and stating that § 1983 was not the vehicle to relitigate "evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations").[3] *See also Tun,* 398 F.3d at 904, where the Seventh Circuit held that school administrators "exercised questionable judgment" in expelling the plaintiff for turning up in nude pictures, when he was, in the end, "just horsing around in the boys' locker room." Expulsion, not listed as possible punishment, was a regrettable overreaction by the defendants," but not a due process clause violation. The plaintiffs were, however, readmitted after an appeal.

Ms. Cairone's case is distinguishable. The decision in question was not merely erroneous or even an abuse of discretion. To punish a student for an undefined offense when the Code itself defines the term used ("harassment") as a kind of discrimination that she was not found to have committed is not merely completely unreasonable but totally arbitrary. Here it is not a question of whether the administrators "overreacted," whether the evidence could support their conclusion, or how to construe the Code. Suspending Ms. Cairone for "harassment," which the Code defines as unwelcome conduct because of someone's protected group membership, and imposing sanctions for *sexual* harassment in particular, while finding she had not engaged in

---

[3] Ms. Cairone here abandons Count III, ¶ 51, at 17.

unwelcome conduct on any discriminatory basis, is not even a *possible* reading of the Code. In Illinois and the Seventh Circuit, "[i]f the language of the contract unambiguously provides an answer to the question at hand, the inquiry is over." *LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir. 1987). That is the case here. There is nothing to interpret. The same rule applies if the Code is interpreted as state or county law. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (stating "where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms.")

Ms. Cairone was punished, officially, for an offense that did not exist under the contract, and practically, for one that the school had not charged her with her with committing. There no conceivable governmental interest for this behavior on the part of Defendants. And if it is objected that no one *died* (insufficient in *Lewis* because the conduct was merely negligent), the devastating effect on someone's educational and career prospects of a sort of discipline that must be announced at every application cannot be underestimated. Especially nowadays, such a sanction can render one an unemployable pariah (Compl. ¶ 53, at 18). Wreaking such havoc on someone's life shocks the conscience. No amount of process could warrant this result in these circumstances.

B.   Ms. Cairone States a Claim for Disability Discrimination.

1.   The Intentional Disability Discrimination Claim Stands Because Ms. Cairone did NOT Concede the Validity of MCC's Charges.

Ms. Cairone sues under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (public entities).  A plaintiff may establish a claim for ADA discrimination in two ways: disparate treatment (intentional discrimination) or failure to accommodate. *See Basith v. Cook Cnty.*, 241 F.3d 919, 926-27 (7th Cir. 2001). A plaintiff may also pursue a claim for retaliation under the ADA. 42 U.S.C. § 12203(a). To make out a claim under Title II, "a plaintiff must

allege facts suggesting that [1] [s]he is a qualified individual with a disability and [2] was excluded from benefits or services of a public entity or discriminated against by such entity [3] because of [her] disability." *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005) (citing 42 U.S.C. § 12132). The Defendants do not dispute that Ms. Cairone is a qualified individual with a disability (autism) or that she was excluded from benefits or services of, MCC, a public entity or discriminated against by MCC. Their sole contention is that *she admits* the exclusion or discrimination was not because of her disability but because, the Defendants say, *she admitted* to having violated the Code by "engaging in a sexually provocative 'boobie dance' without consent, laying on top of them or cuddling others without their consent and asking others to see pictures of Ms. Cairone in bondage." (Mot. at 7, purportedly citing Comp. ¶ 20 at 9)

This is an astonishingly bold and perverse misreading. The Complaint says *exactly the opposite*. Ms. Cairone states that the Defendants determined that she had violated the Code "because she had *supposedly* admitted" to engaging in the stated behavior (Comp. ¶ 2 at 9 emphasis added). In ¶ 21, Ms. Cairone continues: "Both the allegations contained in the [Defendants' Sanctions] Letter and statement that Ms. Cairone admitted to any wrongdoing or the specific alleged acts are false." She goes on to deny having done each of the listed acts individually. *Id.* If she had admitted to these things, or any of them, there would be no case filed. But she most emphatically and unambiguously did not. The Complaint *does not* state, admit, or imply that the Defendants had a legitimate, nondiscriminatory reason to discipline her. She flatly denied that they did. Their "legitimate nondiscriminatory reason was pretextual. The Defendant's actions were acts of intentional discrimination, not legitimate discipline.

    2.   Ms. Cairone States a Failure to Accommodate Claim under Title II Because MCC Failed to Engage in the Interactive Process, Resulting in Accommodation not Being Provided in a Crucial Instance.

Ms. Cairone sought reasonable accommodation from the Defendants, seeking to be interviewed by a someone with a knowledge of autism after the initial meeting (Compl. ¶ 19 at 9) and refusing to allow counsel to participate her appeal (Compl. ¶ 24 at 10). The second accommodation was satisfied by allowing a faculty advisor to participate instead of counsel. *Id*. Refusal to address the first stands. Defendants object that Ms., Cairone failed to request an ADA accommodation (Mot. at 9), but: *of course* a request to be interviewed by someone knowledgeable in one's disability is  a request for ADA accommodation. What else could it be? *See EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005) (It "is sufficient to notify the employer that the employee may have a disability that requires accommodation" to trigger the duty to reasonably accommodate), and the Defendants were on notice before and were further put on notice by the request.

Defendants also argue, with superficially more plausibility, that Ms. Cairone has not shown that her requested accommodations were reasonable or necessary. See *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006) (it must be shown that the requested accommodation is "both efficacious and proportional to the costs to implement it.")(FHAA context). The requested accommodation was clearly necessary, since the initial decisionmaker, Defendant Koronkiewicz, knew nothing about autism, telling Ms. Cairone that she "need[ed] to learn to read body language. Everyone else can, so can you"  (Compl. ¶ 18, at 9), which is like telling a blind person she needs to learn to see because everyone else can. And at an institute of higher education how difficult or costly would it have been to find, or if necessary, engage, someone informed about autism? With proper information and good will these entire proceedings could have avoided.

Defendants, moreover, ignore the requirement of an "interactive process" between the parties "in order to determine the appropriate accommodation for a qualified individual with a disability," which involves "identifying the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3); *Jackson*, 414 F.3d at 813. The interactive process requires the [party required to reasonably accommodate] "to meet the [qualified person with a disability] half-way" *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir.1996).

Here there was no interactive process because Defendants refused to participate, although the burden of "exploring" reasonable accommodation lies with party intended to be offering accommodation. *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000). As a result there was no accommodation provided. In *Rehling v. City of Chi*cago, the Seventh Circuit noted that while failure to engage in the interaction process is itself insufficient for liability, liability can be based "on [a party's] failure to engage in an interactive process in circumstances where the plaintiff alleged that the result of that breakdown was the [party's] failure to provide a reasonable accommodation. 207 F.3d 1009, 1016 (7th Cir. 2000). That is precisely what Ms. Cairone alleges here. With the burden on them to explore what accommodation was reasonable, to meet Ms. Cairone halfway, Defendants failed to engage in the required interactive process, with the result that no accommodation was provided. She has stated a claim.

> 3. Ms. Cairone's Disability Discrimination Claims are Timely in themselves or as Part of a Continuing Violation, or the Time-Barred Ones are Evidence of Discriminatory Intent.

Defendants argue that conduct outside the two years limitation period, prior to June 3., 2015, is barred as untimely, because she was deemed to have filed timely for June 3, 2017 (Order, April 3, 2018), including Defendant Koronkiewicz's statement on May 13, 2015 that

Ms. Cairone "need[ed] to learn to read body language. Everyone else can, so can you" (Compl. ¶ 18, at 9) and her refusal on that date and on May 15 to allow Ms. Cairone to be interviewed by someone with knowledge of autism (Compl. ¶ 19 at 9). That still leaves the core discriminatory conduct, including the imposition of sanctions on June 3, 2016, and the determination that Ms. Cairone had supposedly violated the Code (Compl. ¶ 20 at 9), the Student Appeals Board's Aug. 20, 2015, Decision upholding the Sanctions, and Defendant Miksa's final determination on Sept. 11, 2015, affirming them. It would also include the refusal to accommodate by having Ms. Cairone interviewed by a someone knowledgeable about autism and failing to engage in the interactive process, leading to a failure to reasonably accommodate. That is a continuing duty for a process that takes time, so refusal to do it extends at least through the next few weeks to inside the limitations period.

But even if not, as the Seventh Circuit has held, "it is well settled that evidence of earlier discriminatory conduct by an employer that is time-barred is nevertheless entirely appropriate evidence to help prove a timely claim based on subsequent discriminatory conduct by the employer." *Mathewson v. Nat'l Automatic Tool Co., Inc.*, 807 F.2d 87, 91 (7th Cir. 1986). The appalling remark and the failure to accommodate, show manifest animus against autism.

The earlier conduct is also brought inside the limitations period as a continuing violation. A continuing violation is a claim based on an ongoing policy. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-18 (2002). In *Morgan* the entire series of acts constituting, in that case, a hostile work environment, was a single unlawful practice, so it would be time to file within a limitations period from when any of the acts involved. This brings under the period the failure to reasonably accommodate by having Ms. Cairone interviewed by someone informed about autism or some equivalent accommodation because of the ongoing refusal to part of the

interactive process. Alternatively, of the acts in May and June (and following) are a series of separate violations, they should be treated as a "continuing violation. . . [if] it would have been unreasonable to require the plaintiff to sue separately on each one." *Selan v. Kiley*, 969 F.2d 560, 565-66 (7th Cir. 1992). "Ordinarily this will be because the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory treatment." *Id.* The Seventh Circuit "has applied the continuing violation doctrine when the plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). One or the other or both of these apply here to the May events.

Here there *was* no manifest adverse action until Defendants suspended Ms. Cairone and imposed other sanctions on her on June 3, 2015, the start of the limitations period. Before then, though Defendant Koronkiewicz's ignorant remark was shocking rude, it only became an obvious part of a pattern of discrimination when she and Defendants Patrick and Thomas acted on it at the beginning of the limitations period (Comp. ¶ 46 at 16). Similarly, the refusal to reasonably accommodate or engage in the interactive process was not obviously illegally discriminatory before it had consequences. Before that Ms. Cairone either could not have sued or have been reasonably expected to. Her Disability Discrimination claims are not time-barred.

C.   Ms. Cairone has Alleged Specific Contractual Commitments Breached by the Defendants.

The Defendants assert otherwise, calling Ms. Cairone's reference to contractual rights to the "peaceful pursuit of education; and . . . the reasonable use of College services and facilities" merely "cursory." (Mot. at 11-12). They say she cites no other language, but in fact they themselves refer to other language she cites, for example, the contractual procedural rights Ms.

14

Cairone alleges she was denied (Mot. at 5), which they there criticize, irrelevantly, as not providing a basis for a procedural due process claim. These are offered to support a contract violation claim, and the treatment of the rights Defendants dismiss as "cursory references" are extensively discussed in the Complaint and this Response. See above, Sec. III.A.1. Their objection is conclusory, unsupported, and factually inaccurate.

D.  Ms. Cairone has Valid Retaliation Claims Against the Defendants.

The Defendants retaliated against Ms. Cairone for filing this lawsuit by issuing an ukase in the form of an emailed memorandum sent to MCC faculty and staff prohibiting them from writing in support of Ms. Carione when she was faced with charges at the University of Illinois Champaign-Urbana (UICU) in October 2017.  These are "sufficient facts"  Defendants assert Ms. Cairone has not set forth. She need not provide the actual email on a Response to a Motion to Dismiss, and as they know, cannot do so without converting it to a summary judgment motion. Fed. R. Civ. P. 12(d).

Retaliation is actionable under Section 1983. "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper. This includes retaliation against [a person] for exercising h[er] constitutional right to access the courts." *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (prisoner's rights context). Retaliation is also forbidden under the ADA. To establish a prima facie case of ADA retaliation, Ms. Cairone  must show evidence of: "(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) (ADA Title I context), 42 U.S.C. § 12203(a) (anti-retaliation provision). That disposes of Defendants' complaint not to have identified a legal basis for this claim.

Defendants contend, mysteriously, that Ms. Cairone "cites no facts" indicating that MCC's "directive" would constitute adverse action or is linked to her lawsuit, fielded in June 2017. She is uncertain how to explain to Defendants if they do not understand how being denied support and recommendations while undergoing university disciplinary proceedings is adverse action. Is it necessary to say that one seeks such reference to increase one's chance of prevailing in such proceedings or mitigating their consequences, so being denies them, is likely to be harmful?

Defendants' causation objection is better but still inadequate. How could it be retaliation for filing a lawsuit to engage in adverse action five months after the lawsuit filed? "Speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation." *Sauzek v. Exxon Coal USA, Inc*., 202 F.3d 913, 918 (7th Cir. 2000), outside cases where protected activity and adverse action are very close in time. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). Apart from such cases, "plaintiff also must put forth other evidence that reasonably suggests that her protected [] activities were related to her [the covered party's] discrimination or other adverse action." *Burks v. Wis. DOT*, 464 F.3d 744, 758-59 (7th Cir. 2006).

But to show that protected activity was a "substantial or motivating factor behind the adverse action," *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013) (ADA Title I context), Ms. Cairone has more than "suspicious timing." She contends that such an inference might be rationally drawn, from "a convincing mosaic of circumstantial evidence that would support the inference [of] retaliatory animus." *Id.* The types of circumstantial evidence that are frequently used include "suspicious timing, ambiguous statements oral or written, and other bits and pieces from which an inference of retaliatory intent might be drawn," as well as "evidence

that the employer offered a pretextual reason for an adverse employment action." *Id*. The links need not be tight. Ms. Cairone need only "establish that the protected activity and the adverse action were not wholly unrelated." *Holland v. Jefferson Nat'l Life Ins. Co*., 883 F.2d 1307, 1315 n.4 (7th Cir. 1989).

Here, retaliatory intent is the *only* inference that can be drawn. It is certainly a fair one. MCC issued its diktat at the first possible moment it could have taken any adverse action, shortly after UICU initiated its proceedings, and precisely when Ms. Cairone needed support from her former teachers and MCC staff. There is no imaginable explanation for this other than retaliation for the lawsuit, no conceivable legitimate purpose it might serve, no purpose at all except to hurt Ms. Cairone, and no reason to do except that she had sued them. In addition, the suit alleged a pretextual reason for the adverse action taken against her at MCC, alleged violation of the Code to justify violation of her civil rights and rights to nondiscrimination. One would not expect to find a smoking memo where MCC said, "Let's get back at her," but what they did is almost as damning. This is "a convincing mosaic of circumstantial evidence that would support the inference [of] retaliatory animus." Ms. Cairone therefore states a claim for ADA and civil rights retaliation.

       E.   The Named Individual Defendants Do Not Have Qualified Immunity because they were all Involved in Violations of Clearly Established Federal Constitutional Law.

There can be no qualified immunity defense for the due process violations in this case. "Qualified immunity shields government officials performing discretionary functions from liability for civil damages." *Gorman v. Robinson*, 977 F.2d 350 353 (7th Cir. Ill. 1992). The Supreme Court has said that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Whether an official protected by qualified immunity may be

held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 819 (1982) at 819, assessed in light of the legal rules that were "clearly established" at the time it was taken, *id*. at 818. "This means that he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, (1987) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985)).

Defendants contend that Ms. Cairone's due process claim fails because there is no clearly established right to continued education at a public community college or to pursue a particular career. (Mot. at 13). The first objection addresses, or misses, here procedural due process claim. That claim requires a clear interest rooted in state law, which of course the Code provides ( see Art I, guaranteeing peaceful pursuit of education and [] reasonable use of . . . services and facilities"). But such an interest is only a condition of federal procedural due process, the right to (meaningful) notice and to be heard. It is this procedural due process right, not her state contract or county law right to pursue her continued education that Ms. Cairone here charges the individual defendants with violating. And *that* right is as clear as the noonday sun.

Between the initial meeting on May 13, 2015 and the imposition of sanctions on June 3, 2015, Koronkiewicz gave Ms. Cairone *no* notice that she was facing charges of Code violations and she had no opportunity to respond before they were imposed. No reasonable official would think that was lawful. Ms. Cairone had the right to appeal afterward, but that is  back to Alice, an instance of "sentence first, verdict afterward!" as the White Queen memorably puts it, *Alice's*

*Adventures in Wonderland*, *in The* Annotated Alice (Martin Gardner, ed. 1970) (1865). It is the *model* of a procedural due process denial. Moreover, Ms. Cairone's right to be heard was hobbled by her being barred from campus during the appeals process so she could not interview people or could do so only with great difficulty (Comp. ¶ 25 at 10), and she was provided with the bulky evidence packet only two days before the appeals hearing (*Id.* at 11). That was not what a reasonable official would think was reasonable notice or a reasonable opportunity to be heard. The Student Appeals Board was therefore a kangaroo court. But it was Ms. Cairone's federal procedural due process rights, not her state contract or county law right to pursue her continued education that was abridged by the conduct in a way actionable under Sec. 1983

Ms. Cairone *never* claimed a right to pursue a particular career, as explained in Sec. III.A.3. She claimed a right to pursue some career or other protected under *Board of Regents v. Roth,* 408 U.S. 564 (1972), and *Paul v. Davis,* 424 U.S. 693 (1976), contending that defamatory charges made against her "might seriously damage h[er] standing and associations in his community" and compromises "h[er] good name, reputation, honor, or integrity," or imposes on the plaintiff "a stigma or other disability that foreclosed h[er] freedom to take advantage of other employment opportunities." *Roth,* 408 U.S at 573. The charge of harassment and punishment for sexual harassment risk making here unemployable and a social pariah, especially in the era of #Metoo. It is obvious that no reasonable official would hand a scarlet "H" around someone's neck without due process, much less on the basis of charges that did not exist in the Code-- "harassment" cut loose from the Code's definition as discrimination because of protected status. Defendants do not object to this substantive due process claim.

Finally, Defendants erroneously state that Ms. Cairone fail to allege that Defendants Thomas, Patrick, or Micksa were directly involved in the violations. "An individual cannot be

held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012). She so alleges with respect to each of these persons. Koronkiewicz's Sanctions Letter of June 3, 2015 states that the sanctions were imposed pursuant to a decision of the MCC "disciplinary body," including Thomas and Patrick (¶ 20 at 9, ¶ 31 at 12). This is the core action that Ms. Cairone says violated her due process and ADA rights. And Koronkiewicz admits that Thomas and Patrick were involved in making that decision. Miksa, as the Vice President in charge of student discipline, made the final determination upholding the decisions and sanctions in his letter of Sept. 11, 2015 (¶¶ 32-34 at 12-13). These are not claims of vicarious liability because of supervisory relationships, but allegations based on direct admissions of personal responsibility.

It is difficult to grasp the Defendants' final claim, that the official capacity claims against the named individuals should be dismissed because "the real party in interest" is MCC, of which the individuals were at the relevant times employees (Mot. at 14-15). On this reasoning no one could ever bring an official capacity suit against officials who are the employees or agents of a state actor which is "the real party in interest." That is a reductio ad absurdum, a reduction to the absurd—unless defendants are seriously proposing a revolution in the structure of civil rights law.

IV.     CONCLUSION

For the stated reasons, Defendants' Motion to Dismiss should be denied.

| July 30, 2018 | ss/ **Justin Schwartz** |
| --- | --- |
| | Justin Schwartz |
| | Counsel for Draga Cairone, Plaintiff |
| | ARDC No. 6257328 |
| | 1723 W. Devon Ave #607882 |
| | Chicago, IL 60660 |

20

| | 847-687-5477<br>justinschwartzlaw@gmail.com |
| | |

## NOTICE OF FILING AND PROOF OF SERVICE

To:

Emily Bothfeld
Frank Garrett
55 West Monroe, Suite 800
Chicago, IL 60603-5144
ph: 312.332.7760
fax:312.332.7768

I, Justin Schwartz, an attorney, state that I caused the attached AMENDED COMPLAINT to be

filed using the CM/ECF system and served on counsel for Defendants using the CM/ECF system.

All participants in the case are registered CM/ECF users who will be served by the CM/ECF

system.

ss/ **Justin Schwartz**                                        July 30, 2018
Justin Schwartz