**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DRAGA CAIRONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17-cv-4247 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| MCHENRY COUNTY COLLEGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion to dismiss [34]. For the reasons set forth below, the motion is granted in part and denied in part. The parties are given until August 23, 2019 to file a supplemental brief of no more than five pages addressing whether Plaintiff's ADA, retaliation, and breach of contract claims against the individual Defendants should be dismissed. The case is set for status on September 3, 2019 at 9:00 a.m.

**I.      Background**

Defendant McHenry County College ("MCC") is a county institution of higher education operated by McHenry County. [32, at ¶ 4.] Plaintiff Draga Cairone was a student enrolled at MCC during the relevant period. [*Id*. at ¶ 3.] Plaintiff has autism, which prevents her from being able to understand body language, understand sarcasm, or detect lies. [*Id*. at ¶ 6.] MCC learned about Plaintiff's autism in 2009. [*Id*. at ¶ 8.] Plaintiff was disciplined by MCC on numerous occasions, including in 2009, 2012, 2013, and 2015.

This lawsuit relates primarily to disciplinary proceedings against Plaintiff in 2015. On or about May 11, 2015, Plaintiff received notice directing her to meet with Defendant Talia

Koronkiewicz, the official then in charge of student discipline, to discuss "possible violations" of MCC's Student Code of Conduct (the "Code"). [*Id*. at ¶ 11.] Plaintiff was only given two days to prepare for the meeting and was not given any further information about what the "possible violations" were. [*Id*.] Koronkiewicz had been investigating and documenting allegations that Plaintiff had engaged in inappropriate behavior in the student lounge. [*Id*. at ¶ 12.] Specifically, other students alleged that Plaintiff engaged in nonconsensual touching, unwanted physical closeness, and shaking the bottom of her bra cups in a way that made other students uncomfortable (what the parties refer to as the "boobie dance"). [*Id*.]

Plaintiff alleges that Koronkiewicz reported that three students made statements— presumably about the alleged misconduct. [*Id*.] Koronkiewicz said that these students said that nobody wanted to confront Plaintiff because—according to the students—she is "dramatic and makes people feel bad." [*Id*. at ¶ 13.] The students also said that Plaintiff would nestle, cuddle, or lie on other students without asking. [*Id*.] One student said that Plaintiff was "always touching" her even though she would tell Plaintiff to stop. [*Id*.] Plaintiff alleges that on all occasions she distributed written or digital consent forms for other students to sign, explaining her cognitive limitations and asking for consent to touch or to engage in other intimate behavior that might call for consent. [*Id*. at ¶ 14.] When someone declined to sign the consent form, Plaintiff would not engage in intimate behavior with the student (with the exception of one individual named Brandon Marciel). [*Id*.] The point of these forms was to ensure that Plaintiff had express consent. [*Id*.]

On May 13, 2015, Koronkiewicz interviewed Plaintiff regarding these allegations. [*Id*. at ¶ 15.] In the May 13, 2015 interview, Koronkiewicz told Plaintiff, "you need to learn to read body language. Everyone else can, so can you. If you can't you can't receive or give consent."

[*Id*. at ¶ 18.]   At the interview, Plaintiff asked Koronkiewicz to consult with an advisor or person with knowledge of and expertise in autism so that the disciplinary board could have the benefit of advice from someone with knowledge of Plaintiff's disability.   [*Id*. at ¶ 19.]

Koronkiewicz's notes from the meeting indicate that she and Plaintiff discussed Plaintiff's "excessive contact without asking."   [*Id*. at ¶ 15.]   The notes do not indicate that Plaintiff admitted to such touching.   [*Id*.]   Plaintiff told Koronkiewicz that she touched the bottom of her bra cups for medical reasons, not as a sexual provocation.   [*Id*.]   The notes from the meeting indicate that Plaintiff:

- Admitted to asking "if people want[ed] to see her bondage gear, but no nudes."

- Said that her "friends have told her she may be unethical and now [she] doesn't know if she understands consent."

- Admitted to knowing that her conduct made people uncomfortable and that she had learned that people do not tell her this.

- Admitted to sending a text in which she discussed another student as "the object being cut up [with a sword] at a party," which was intended as a joke and was inappropriate.

[*Id*.]   Plaintiff claims that these statements "are largely false, incomplete, and misleading."   [*Id*. at ¶ 16.]

Plaintiff did say that the touching of her bra was done for medical reasons and not for any sexual purpose.   [*Id*.]   Plaintiff told Koronkiewicz that the touching (done fully clothed) was a prophylactic for breast cancer and had a scientific medical basis.   [*Id*.]   Plaintiff informed Koronkiewicz that a lot of female students at MCC were doing this without getting in trouble, so she thought it was okay.   [*Id*.]   Plaintiff also told Koronkiewicz that she asked other student's consent to see photos of her bondage "gear," but not photos of her wearing the gear.   [*Id*.]   She explained to Koronkiewicz that this inquiry was an attempt, sometimes successful, to gain consent.

[*Id.*]   Plaintiff did not show pictures of her gear to students who denied consent.   [*Id.*]   Plaintiff did report that people in the student lounge told her that she might be unethical, but she disagreed with that evaluation.   [*Id.*]   Plaintiff did not tell Koronkiewicz that she did not understand consent.   [*Id.*]   Plaintiff did, however, tell Koronkiewicz that she did not understand revocation of consent if it was not verbal or written.   [*Id.*]   Plaintiff did not admit to knowing that her conduct made people uncomfortable without them saying so.   [*Id.*]   Rather, Plaintiff acknowledged that Koronkiewicz told her this at the interview.   [*Id.*]   Finally, Plaintiff did not tell Koronkiewicz that she had discussed cutting up a student with a sword.   [*Id.*]   Rather, Plaintiff informed Koronkiewicz that she had responded to such comments made by another student "by inquiring about that student's name (over text) to express incredulity and disapproval."   [*Id.*]

Two days after the May 13, 2015 interview, Koronokiewicz rejected Plaintiff's request to consult with a person with knowledge of her disability and did not propose any alternative.   [*Id.* at ¶ 19.]   Between May 13, 2015 and June 3, 2015, Koronkiewicz did not give Plaintiff any notice or warning that she was facing charges of harassment or of violating any other provisions of the Code.   [*Id.* at ¶ 17.]   On June 3, 2015, Koronkiewicz issued an official Sanctions Letter stating that after a "due process meeting" with [Plaintiff] and others, an MCC "disciplinary body" including Defendants Flecia Thomas and Juletta Patrick determined that Plaintiff had violated the harassment provision of the Code.   [*Id.* at ¶ 20.]   The letter indicated that this decision was based on Plaintiff's admission that she had (1) touched her bra/breasts in a sexually provocative way, (2) laid on and cuddled with other students without their consent, and (3) asked others to see pictures of Plaintiff in bondage.   [*Id.* at ¶ 20.]   Plaintiff alleges that she "always obtained express consent for any such interaction, either orally or writing or by text."   [*Id.* at ¶ 30.]   But Plaintiff does not explain what is meant by "any such interaction."   Plaintiff further alleges that she never

laid on or cuddled with other students without their express consent.   [*Id*. at ¶ 21.]   The disciplinary body did not conclude that Plaintiff had engaged in *sexual* harassment as defined in the Code.[1]   [*Id*. at ¶ 22.]   Nor did the disciplinary body conclude that Plaintiff had harassed anyone because of sex or on the basis of any other protected group membership or characteristic.   [*Id*.]

The Sanctions Letter indicated that MCC would be imposing the following consequences on Plaintiff:

- A one-year suspension and ban from MCC, starting on June 11, 2017.[2]

- A requirement that Plaintiff provide a re-enrollment application and a personal statement discussing (at least in part) certain issues regarding sexual harassment.

- A requirement that Plaintiff undergo sexual harassment training.

[*Id*. at ¶ 23.]   Plaintiff was advised that she could file a notice of intent to appeal by June 17, 2015, which she did.   [*Id*.]   Sometime before June 17, 2015, Plaintiff requested that counsel be allowed to speak on her behalf at the appeals hearing that was to be scheduled.   [*Id*. at ¶ 24.]   This request was rejected on June 18, 2015.   [*Id*. at ¶ 24.]   However, Plaintiff was allowed to have a non-attorney advisor speak on her behalf.   [*Id*.]

On June 24, 2015, Koronkiewicz gave Plaintiff a letter (dated June 23, 3015) setting the hearing for July 29, 2015.   [*Id*. at ¶ 25.]   The letter indicated that Plaintiff had to provide a witness list by July 1, 2015.   [*Id*.]   The letter further indicated that Plaintiff had to provide an oral statement and copies of all documents Plaintiff was submitting in support of her appeal by July 15, 2015.   [*Id*.]   Plaintiff was banned from campus, so she could only gather materials remotely.

---

[1]  The Code defined "sexual harassment" as "unwelcome conduct of a sexual nature which denies or limit[s], on the basis of sex[,] a student's ability to participate in * * * College[] programs * * *."   [*Id*. at ¶ 22.]

[2]  The Court suspects that this date may be a typographical error, as Plaintiff's second amended complaint indicates that the ban was in effect during the July 2015 appeal proceedings, as discussed below. Regardless, this date has no impact on the Court's analysis below.

[*Id*.]  She did not make the 9:00 a.m. deadline.  [*Id*.]  At 9:30 a.m. on July 15, 2015, Koronkiewicz emailed Plaintiff to inform her that the deadline had passed.  [*Id*.]  Plaintiff wrote back to say that her witnesses had not been contacted and that she therefore requested an extension. [*Id*.]  Koronkiewicz replied that she had spoken to one of the witnesses in May and that the statements of three people would be included in MCC's record of evidence (the "Packet").[3]  These witnesses would not be allowed to testify.  [*Id*.]

The hearing was rescheduled for Aug. 12, 2015.  [*Id*.]  MCC gave Plaintiff the Packet containing the case against her on Aug. 10, 2015, two days before the appellate hearing.  [*Id*. at ¶ 26.]  The Packet contained witness statements from the initial disciplinary proceedings.  [*Id*. at ¶ 27.]  It also contained two interviews "written" by Koronkiewicz, on July 15, 2015.  [*Id*.]  In these written interviews, one witness stated that they believed that Plaintiff "acts appropriately" and that they had never witnessed any nonconsensual touching.  [*Id*.]  The other witness stated that Plaintiff stopped touching and apologized when asked to cease physical contact that had become unwelcome.  [*Id*.]  This witness further stated that other students had said that Plaintiff's touching and comments made them uncomfortable, but they had not told her so.  [*Id*.]  The witness thought that these people gave Plaintiff nonverbal cues that Plaintiff did not understand because of her autism.  [*Id*. at ¶ 27.]  The Packet also contained a record of the disciplinary incidents from 2009 and 2012 under the heading "Relevant Student Conduct (Chronological Order)."  [*Id*. at ¶ 28.]  Neither of these incidents involved harassment or discrimination and their relevance was not explained until invoked in the final denial of Plaintiff's appeal.  [*Id*.]

---

[3] It is unclear from the second amended complaint whether one of the three individuals that would be submitting statements included Plaintiff's witness who had spoken with Koronkiewicz.

On August 20, 2015, the Student Appeals Board (SAB) issued a decision upholding the sanctions against Plaintiff (the "Appeals Decision"). [*Id*. at ¶ 29.] Koronkiewicz signed the Appeals Decision. [*Id*.] The Appeals Decision stated that violations of the Code were wider than "sexual harassment" and fell under the undefined category of "harassment." [*Id*.] The Appeals Decision was based on admissions purportedly made by Plaintiff during the May 13, 2015 interview. [*Id*.] Specifically, the Appeals Decision recited the facts that Plaintiff had purportedly admitted (1) to engaging in physical contact without consent, (2) being told by friends that her behavior may be unethical, and (3) that she did not understand consent. [*Id*.] According to Plaintiff, the Appeals Decision treated "harassment" as a free-floating violation independent of differential treatment because of membership in a protected class despite the clear definition of sexual harassment in the Code. [*Id*.] The Appeals Decision also stated that Plaintiff admitted to knowing that her behavior made some people uncomfortable and that she said she had learned that people do not tell her this. [*Id*. at ¶ 30.] The Appeals Decision referenced statements by a complainant and three student witnesses that purportedly "corroborated" Plaintiff's purported "admissions." [*Id*.] Plaintiff alleges that each of these statements were false. [*Id*.]

Plaintiff appealed to Vice President Miksa, who was responsible for making all final decisions about student discipline. [*Id*. at ¶ 32.] On September 11, 2015, Miksa upheld the disciplinary decision against Plaintiff, including the sexual harassment sanctions. [*Id*.] Miksa again stated that Plaintiff was found to have committed "harassment," not sexual harassment. [*Id*.] Miksa credited the witnesses relied on by Koronkiewicz and reasserted her findings of fact. [*Id*.] Miksa also upheld the severity of the sanction based on the incidents from 2009 and 2012. [*Id*. at ¶ 34.] The incidents from 2009 and 2012 had not been discussed with Plaintiff during the

2015 case and she had no notice or opportunity to be heard on their use in those deliberations. [*Id*. at ¶ 35.]

## II.    Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

## III. Analysis

### A. Procedural Due Process Claim

Defendants move for dismissal of Plaintiff's procedural due process claim brought under 42 U.S.C. § 1983. The Fourteenth Amendment imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Due Process Clause. See *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To assert a violation of the Due Process Clause, Plaintiff must be able to show that she had a "property interest" and that she was deprived of this interest without due process of law. See *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003) (citing *Bishop v. Wood*, 426 U.S. 341, 343 (1976)). Property interests are not created by the United States Constitution; "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Moore v. Muncie Police and Fire Merit Com'n*, 312 F.3d 322, 326 (7th Cir. 2002) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Defendants argue that Plaintiff's due process claim fails because she has not alleged that she was deprived of a protected interest.

In the education context, a plaintiff must show that she "has a legally protected entitlement to [her] continued education at the university." *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013) (citations omitted). Plaintiff can make such a showing at the pleading stage by alleging "the existence of an express or implied contract with the [ ] school." *Id*. Plaintiff cannot "merely state that such an implied contract existed." *Id*. (citation omitted). "Instead, the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id*. (citation omitted).

9

Plaintiff argues that the Code establishes a protected contractual interest. Specifically, Plaintiff argues that in exchange for Plaintiff agreeing to "behave appropriately," MCC agreed to respect Plaintiff's "properly executed rights including the 'peaceful pursuit of education; and * * * the reasonable use of College services and facilities." [44, at 4 (quoting Second Am. Compl.).] Defendants respond that Plaintiff fails to identify language in the Code establishing an enforceable contract between Plaintiff and the college. The Court agrees. To begin, Plaintiff fails to explain how the cited language represents an agreement. The Code states that "students are expected to behave appropriately, with self-respect and respect for others. [MCC], in turn, respects the properly exercised rights of its students." [32-1, at 3.] These stated expectations are not sufficiently definite to establish a contractually enforceable agreement. Under Illinois law, in order for a contract to be enforceable, the contract must be "sufficiently definite so that its terms are reasonably certain and able to be determined." *DiLorenzo v. Valve and Primer Corp.*, 807 N.E.2d 673, 678 (Ill. App. Ct. 2004). Although the Code states that "students are expected to behave appropriately," that obligation is not sufficiently definite so that its terms are reasonably certain and able to be determined. Similarly, the meanings of the terms "peaceful pursuit of education" and "reasonable use of College services and facilities" are unclear. Plaintiff therefore has not alleged facts sufficient to find that she had a "*legally protected entitlement* to [her] continued education at the university" as necessary to state a procedural due process claim. *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013).[4]

---

[4] Plaintiff asserts that she is not attempting to bring a procedural due process claim based on the college's failure to follow college-created procedures. [44, at 5.] Such a claim also would fail because "the failure to comply with state procedural rules," including rules found in student handbook, "cannot form the basis for a federal constitutional claim." *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 707 (7th Cir. 2002).

Plaintiff further argues that she had a protected liberty interest "in pursuing. 'any occupation of her choice.'" [44, at 5.] Plaintiff recognizes that a person does not have a protected liberty interest in "any particular career," but nonetheless argues that she has a liberty interest in "any occupation of her choice." [44, at 6.] Like Defendants, the Court does not see any substantive difference between the two formulations. Plaintiff goes on to discuss cases holding "that the state may infringe a plaintiff's liberty interest when, *in declining to rehire an employee*, it makes a 'charge against him that might seriously damage his standing and associations in his community' that places his 'good name, reputation, honor, or integrity * * * at stake' or when, in failing to rehire, it imposes on the plaintiff 'a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.'" *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)) (emphasis added). To establish a protected interest under this standard, Plaintiff "must plead that (1) the defendant made stigmatizing comments about [her]; (2) those comments were publicly disclosed; and (3) [s]he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010). As noted by Defendants, it is not clear that this doctrine applies to students like Plaintiff. Plaintiff has not cited any cases extending this doctrine beyond the employment context. In any event, Plaintiff has not alleged that the public disclosure of stigmatizing comments foreclosed any employment or educational opportunities. To the contrary, Plaintiff's second amended complaint indicates that Plaintiff later matriculated at the University of Illinois. [32, at ¶ 35.] Because Plaintiff has not alleged that she was deprived any protected interest, the Court grants Defendants' motion to dismiss Plaintiff's procedural due process claim.

## B.    Substantive Due Process Claims

Defendants move for dismissal of Plaintiff's substantive due process claim.    The Seventh Circuit has clarified that the right to substantive due process "is very limited."    *Viehweg v. City of Mount Olive*, 559 F. App'x 550, 552 (7th Cir. 2014) (quoting *Tun v. Whitticker*, 398 F.3d 899, 900-02 (7th Cir. 2005)).    Plaintiff has not identified any fundamental right that Defendants allegedly violated.    Without the violation of a fundamental right, Plaintiff must prove that public officials abused their power, and thereby violated substantive due process, with behavior that "shocks the conscience."    See *Rochin v. California*, 342 U.S. 165, 172 (1952); *Viehweg*, 559 Fed. App'x. at 552; *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012).    "'[O]nly the most egregious official conduct' can be said to violate this standard."    *Catinella v. Cty. of Cook, Illinois*, 881 F.3d 514, 519 (7th Cir. 2018) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Although it is not clear to the Court exactly what Plaintiff is arguing, Plaintiff appears to contend that Defendants' conduct shocks the conscience because they punished Plaintiff for conduct that did not constitute an offense under the Code.    In making this argument, Plaintiff cites to contract cases holding that unambiguous contractual language should be enforced by courts. [44, at 9 (citing *LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir. 1987); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989)).]    However, these cases do not address what is necessary to establish a substantive due process violation.    The Seventh Circuit has held that "[a] mere breach of contract does not support a substantive due process claim." *Khan v. Bland*, 630 F.3d 519, 523 (7th Cir. 2010).    Thus, even assuming the Code contractually limits what conduct is punishable, Defendants' failure to comply with the Code does not establish a substantive due process violation.    Because the Court does not see any other basis for concluding that Defendants' conduct shocks the conscience, the Court grants Defendants' motion to dismiss

Plaintiff's substantive due process claim.

### C. Disability Discrimination Claim

Plaintiff brings a disability discrimination claim under Title II of the Americans with Disabilities Act ("ADA"). To state a prima facie case of discrimination under the ADA, Plaintiff must allege "(1) that [she] suffers from a disability as defined by the [ADA], (2) that [she] is qualified to participate in the program in question, and (3) that [she] was either excluded from participating in or denied the benefit of that program based on [her] disability." *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)). Defendants argue that Plaintiff's intentional discrimination claim fails "because Plaintiff fails to demonstrate that Defendants' purported discriminatory actions were on the basis of Plaintiff's disability." [35, at 7.] Specifically, Defendants argue that Plaintiff cannot show that she was discriminated against on the basis of her disability because she admitted to engaging in the misconduct that resulted in her being disciplined.

Defendants argue that Plaintiff's second amended complaint acknowledges "that Plaintiff admitted 'to engaging in a sexually provocative "boobie dance" without consent, laying on top of and cuddling others without their consent, and asking others to see pictures of [Plaintiff] in bondage." [35, at 7.] However, Defendants mischaracterize what the second amended complaint alleges. Plaintiff alleges that Koronkiewicz issued an official sanctions letter stating that Plaintiff admitted to this conduct. [32, at ¶ 20.] But Plaintiff also alleges that this representation was false. [*Id*. at ¶ 21.] It is reasonable to infer a discriminatory intent when a defendant makes false allegations against a plaintiff. *Oleszczak for & on behalf of C.O. v. Illinois Dep't of Children & Family Servs.*, 2018 WL 3428102, at *5 (N.D. Ill. July 16, 2018) (finding that "false and baseless" allegations made against a plaintiff supported an inference of discriminatory

intent). Furthermore, Plaintiff has alleged that Koronkiewicz made comments indicating that she disciplined Plaintiff because of her disability. Specifically, Koronkiewicz stated that Plaintiff needed "to learn to read body language" like everybody else can. Drawing all reasonable inferences in Plaintiff's favor, Defendants' have not shown that Plaintiff fails to state a claim of intentional discrimination claim.[5] *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (holding that a plaintiff need only plead "a plausible claim, after which he receives the benefit of imagination, so long as the hypotheses are consistent with the complaint") (internal quotation marks omitted). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's intentional discrimination claim.

## D. Failure to Accommodate Claim

Plaintiff also brings a failure to accommodate claim under Title II of the ADA. To establish her failure to accommodate claim, Plaintiff must allege "that she is a qualified individual with a disability and that the School was aware of her disability yet failed to provide her with a reasonable accommodation." *Klene v. Trustees of Indiana Univ.*, 413 F. App'x 919, 920 (7th Cir. 2011) (citing *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 841 (7th Cir. 2001); *Hoffman v.*

---

[5] The Court notes that Defendants' initial motion to dismiss did not focus on the absence of allegations regarding a discriminatory intent. Rather, Defendants argued that because Plaintiff admitted to the misconduct, the second amended complaint established that Plaintiff was disciplined for legitimate, non-discriminatory reasons. Plaintiff's response therefore addressed that argument. In their reply, however, Defendants argue that Plaintiff's response "does little more than state that Plaintiff denies the charges of which she was accused, and therefore, that Defendants intentionally discriminated against her." [47, at 12.] Given that Defendants based their opening argument for dismissing Plaintiff's intentional discrimination claim on Plaintiff's purported admission that she committed the misconduct alleged, it makes sense for Plaintiff to focus on allegations noting that she did not in fact admit to the purported misconduct. Although the Court is denying Defendants' motion to dismiss Plaintiff's intentional discrimination claim, this is without prejudice to Defendants later arguing that Plaintiff cannot establish discriminatory intent. No party addressed what allegations are necessary to establish discrimination at the motion to dismiss stage. The Court will not dismiss Plaintiff's intentional discrimination claim on that basis without the benefit of briefing.

*Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001)). Defendants argue that Plaintiff's failure to accommodate claim fails for several reasons.

First, Defendants argue that Plaintiff's failure to accommodate claim fails because the requested accommodation (*i.e.*, Plaintiff's request to be interviewed by someone with knowledge of autism) was not presented to the college as an accommodation. Although Plaintiff must show that she informed the college of her disability to bring a failure to accommodate claim, Plaintiff need only allege that she informed the college that she has a disability and that she desired an accommodation. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005) (employment context). Because Plaintiff alleges that she informed the college that she had autism and that she requested to be interviewed by someone with knowledge of autism, Plaintiff sufficiently alleges that she requested an accommodation and the Court denies Defendants' motion to dismiss Plaintiff's failure to accommodate claim on that basis.

Second, to the extent that Plaintiff contends that Defendants failed to engage in the interactive process, Defendants argue that "the Seventh Circuit has made clear that 'a plaintiff cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in the interactive process." [47, at 13 (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1016. (7th Cir. 2000)).] However, while the "failure to engage in the interactive process alone is not an independent basis for liability, it is actionable 'if it prevents identification of an appropriate accommodation for a qualified individual.'" *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014) (quoting *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013)). Defendants further argue that the fact that they allowed Plaintiff to have an advisor speak on her behalf was a reasonable accommodation for Plaintiff's request to have any counsel participate in her appeal. While that may be the case, Plaintiff makes clear that she is not bringing

a failure to accommodate claim based on that requested accommodation. [44, at 11.] Rather, Plaintiff is bringing a failure to accommodate claim based on her request to have someone with knowledge of autism interview her. [*Id*.] Defendants fail to explain how they engaged in the interactive process with Plaintiff with respect to that request.

Third, Defendants argue that the Court should dismiss Plaintiff's failure to accommodate claim because Plaintiff fails to allege facts sufficient to establish that she requested accommodations that "were reasonable or necessary to ameliorate the effect of her disability." [35, at 8.] Defendants similarly argue that Plaintiff's failure to accommodate claim fails because Plaintiff does not allege "that her disability was a 'but for' cause of [the] denial of [her] request to be interviewed by an autism expert." For reasonable accommodation claims brought under the Fair Housing Amendments Act of 1988 ("FHAA"), courts have held that a plaintiff must allege that "the accommodation is 'necessary to ameliorate the effect of the plaintiff's disability so that she may compete equally with the non-disabled in the housing market." *Affordable Recovery Hous. v. City of Blue Island*, 2016 WL 5171765, at *16 (N.D. Ill. Sept. 21, 2016), aff'd, 860 F.3d 580 (7th Cir. 2017) (citing *Wisc. Cmty. Servs.*, 465 F.3d at 749). However, Plaintiff does not cite—and the Court has not identified in its own research—any cases applying that same standard to Title II claims. Still, both the FHAA and Title II of the ADA contain a "necessity" requirements that the Seventh Circuit has linked "to a causation inquiry." *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006). In Title II accommodation cases, a plaintiff must allege that "an accommodation is necessary because a person's disability is the cause for his being denied the service or benefit." *Id*. at 755.

Here, Plaintiff alleges that Defendants failed to accommodate her disability when they rejected her request to be interviewed by a person having knowledge and understanding of autism

so that the disciplinary board could have the benefit of such expertise. Defendants seem to assume that the denial of Plaintiff's request to be interviewed by someone with knowledge and understanding of autism was the "service or benefit" that Plaintiff claims she was denied—arguing that Plaintiff does not allege facts indicating that the request would have been approved if not for her disability. However, the Court understands Plaintiff's request to be interviewed by a person with knowledge and understanding of autism to be the requested accommodation, with her continued education being the service or benefit denied. Plaintiff argues that this accommodation was necessary because "the initial decision maker, Defendant Koronkiewicz, knew nothing about autism, telling [Plaintiff] that she 'needed to learn to read body language" just like everyone else can. [43, at 11.] It is unclear to the Court whether a failure to accommodate claim can proceed based on such a theory. Neither party addresses the real issue—whether the denial of a request during disciplinary proceedings resulting in an adverse action can serve as the basis of a failure to accommodate claim. Given that Plaintiff's failure to accommodate claim is dismissed as time-barred as discussed below, the Court will not address whether Defendants' denial of Plaintiff's request to be interviewed by a person with knowledge and understanding of autism can serve as the basis for a failure to accommodate claim under Title II of the ADA.

### E. Timeliness of ADA Claims

Defendants also argue that Plaintiff's ADA claims should be dismissed as time-barred to the extent they depend on conduct occurring before June 3, 2015. Dismissal based on a statute of limitations is an affirmative defense. See Fed. R. Civ. P. 8(c)(1). Nevertheless, "dismissal is appropriate when the plaintiff pleads [herself] out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009); see also *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)

(explaining that dismissal is appropriate "where, as here, the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations"). Claims brought under Title II of the ADA borrow the personal injury statute of limitations of the state in which the case is filed. *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 n.3 (7th Cir. 1996). "In Illinois the statute of limitations for personal-injury actions is two years from when the cause of action accrued[.]" *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016).

With respect to Plaintiff's intentional discrimination claim, Plaintiff apparently concedes that her intentional discrimination claim cannot be based on conduct occurring before June 3, 2015. However, as noted by Plaintiff, "it is well settled that evidence of earlier discriminatory conduct by [a defendant] that is time-barred is nevertheless entirely appropriate evidence to help prove a timely claim based on subsequent discriminatory conduct by the [defendant]." *Mathewson v. Nat'l Automatic Tool Co.*, 807 F.2d 87, 91 (7th Cir. 1986) (collecting cases). Thus, although any intentional discrimination claim based on conduct occurring before June 3, 2015 is time-barred, evidence of discrimination occurring before that day may nevertheless be relevant to Plaintiff's intentional discrimination claim.

With respect to Plaintiff's failure to accommodate claim, however, the Court agrees that Plaintiff's claim is time-barred. A failure to accommodate claim accrues when the accommodation is denied. *Paul v. Chicago Transit Auth.*, 2018 WL 1378183, at *4 (N.D. Ill. Mar. 19, 2018). Plaintiff's request for an accommodation was denied on May 13, 2015 when Koronokiewicz rejected Plaintiff's request to be interviewed by a person with knowledge of her disability and did not propose any alternative. [*Id*. at ¶ 19.] Plaintiff argues that the statute of limitations "extends at least through the next few weeks" because of the continuing duty to engage

in the interactive process.   However, Plaintiff does not allege any facts indicating that she believed that Defendants continued to engage in the interactive process after that date.   "[A] refusal to accommodate is a discrete act—not an ongoing omission—and therefore the continuing violation doctrine does not apply" to failure to accommodate cases.   *Teague v. Nw. Mem'l Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012) (citations omitted).   Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's failure to accommodate claim as time-barred.

### F.     Retaliation

Plaintiff also brings a retaliation claim against Defendants under Section 1983 based on the allegation that MCC—in retaliation for Plaintiff filing this lawsuit—instructed faculty not to provide references letters (at least as representatives of MCC) on Plaintiff's behalf in connection with disciplinary proceedings against Plaintiff at the University of Illinois.   [32, at ¶ 35.] Defendants argue that such conduct does not amount to an "adverse action" for the purposes of Section 1983.   Although the Court also questions whether prohibiting faculty from writing letters of recommendation qualifies as an adverse action, Defendants fail to cite any cases or authority in support of their contention.   Defendants therefore have waived this argument by failing properly to present it to the Court.   See *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

Defendants also argue that Plaintiff fails to allege any causal link between the adverse action and the protected activity.   Plaintiff filed her second amended complaint on June 6, 2017. [See 1.]   Later in 2017, MCC issued the challenged "directive prohibiting MCC faculty from providing [Plaintiff] with letters of support in her proceedings before the University of Illinois in or around Oct. 2017."   [32, at ¶ 54.]   It is unclear based on the allegations in the second amended

complaint whether the directive was sent in or around October 2017 or earlier, whether the proceedings before the University of Illinois were in or around October 2017, or whether both occurrences were in October 2017.   In any event, Plaintiff's allegations of causation are sufficient at the motion to dismiss stage.   Although temporal proximity alone is not sufficient to establish causation at the summary judgment stage, *Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004), to survive a motion to dismiss Plaintiff "needed to allege only that she was subject to an adverse [ ] action after she engaged in a specifically identified protected activity."[6]  *Smith v. EMB, Inc.*, 576 F. App'x 618, 620 (7th Cir. 2014).   Because Plaintiff has done so, the Court denies Defendants' motion to dismiss Plaintiff's retaliation claim.

### G.      Breach of Contract

Defendants move for dismissal of Plaintiff's breach of contract claim.   Defendants argue that, other than referencing her claimed right to the "peaceful pursuit of education" and "the reasonable use of College services and facilities," Plaintiff fails to cite to any specific contractual promise that the College failed to honor.   [35, at 11-12.]   Plaintiff responds that she sufficiently alleges that the College failed to honor certain procedural rights contained in the Code.   [44, at 14-15.]   In their reply, Defendants argue that nowhere in Plaintiff's second amended complaint does she identify what promises she made to MCC.   However, Defendants did not raise this argument in their opening brief and therefore have waived the argument.[7]  *West v. MeadWestvaco*

----

[6] Defendants' reliance on cases decided at the summary judgment stage do not support the contrary position, as the burden of proof is not the same.   *Gallagher v. Dart*, 2018 WL 1635852, at *4 (N.D. Ill. Apr. 5, 2018) (discussing the heavier burden placed on plaintiffs at the motion for summary judgement stage).

[7] Defendants did raise this argument in the portion of their opening brief discussing Plaintiff's procedural due process claim, but they did not raise it in the portion of their opening brief addressing Plaintiff's breach of contract claim.   Because Plaintiff is not raising a procedural due process claim based on MCC's failure to follow the procedures set forth in the student handbook, Plaintiff had no reason to address this argument

*Corp.*, 81 F. App'x 74, 75 (7th Cir. 2003) ("[A]rguments presented for the first time in a reply brief are waived." (citation omitted)).

In any event, Defendants fail adequately to respond to Plaintiff's citation to cases noting that, in Illinois, "a college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins."[8] *Diperna v. Chi. Sch. of Prof'l Psychology*, 893 F.3d 1001 (7th Cir. 2018) (quoting *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (Ill. App. Ct. 2004)) (internal quotation marks omitted). Defendants argue that these cases are inapplicable because they involved private universities, which MCC is not. However, Defendants fail to cite any cases or otherwise explain how this distinction is relevant. "It is not the obligation of this court to research and construct the legal arguments open to the parties, especially when they are represented by counsel." *United States v. Kinzer*, 13 F. App'x 399, 402 (7th Cir. 2001) (quoting *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986)) (internal quotation marks omitted). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's breach of contract claim for failure to state a claim.

### H. Claims Against Individual Defendants

The individual Defendants make a number of additional arguments for the dismissal of Plaintiff's claims against them. First, the individual Defendants argue that they are entitled to qualified immunity. "The qualified immunity doctrine provides defendants immunity from suit, not just a defense to liability." *Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017) (citing *Pearson*

---

in connection with her procedural due process claim.

[8] With respect to Plaintiff's procedural due process claim, the Court concluded that Plaintiff fails to allege facts sufficient to establish a contractually enforceable agreement. Although the Court is allowing Plaintiff to proceed with her breach of contract claim, this is because Plaintiff's breach of contract claim is based on MCC's alleged failure to follow *procedures* in the student handbook, which cannot serve as the basis of a procedural due process claim. *Martin*, 295 F.3d at 707.

*v. Callahan*, 555 U.S. 223, 231 (2009)).    "Though it is an affirmative defense for pleading purposes, the plaintiff carries the burden of showing that defendants are not immune."    *Id.*   "Government officials performing discretionary functions are entitled to qualified immunity from suit 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"    *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 352 (7th Cir .2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).    Defendants argue that "Plaintiff fails to set forth factual support for her contention that the individual Defendants" violated her "clearly established constitutional rights."[9]    [35, at 13.]    Specifically, Defendants contend that "there is no clearly established right to continued education at a public community college, nor is there a clearly established right to follow a particular career."    [*Id*.]    Although the Court questions whether Defendants are properly characterizing the constitutional rights raised by Plaintiff, as noted above Plaintiff's constitutional claims are subject to dismissal for failure to state a claim.[10]

Second, the individual Defendants argue that Plaintiff's claims against them in their official capacities should be dismissed as the claims are analogous to Plaintiff's claims against the College. "Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself."    *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). Courts therefore have dismissed claims against individual defendants in their official capacities as duplicative when the entity itself is named as a defendant.    See, *e.g., Brown v. Cook Cty.*, 2018 WL 3122174, at *14 (N.D. Ill. June 26, 2018); *Davis v. Vill. of Hazel Crest*, WL 835224, at *3

---

[9]   The Court notes that whether a law is "clearly established" is a "purely legal issue."   *Johnson v. Jones*, 515 U.S. 304, 313 (1995).

[10]   To the extent that the individual Defendants claim that they are entitled to qualified immunity on Plaintiff's other claims, Defendants have not sufficiently presented those arguments to the Court and they are therefore waived.   *Mahaffey*, 588 F.3d at 1146.

(N.D. Ill. Feb. 13, 2018) (collecting cases). Plaintiff fails to cite any cases or otherwise explain why such duplicative claims against individual defendants should be allowed to proceed. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims against the individual Defendants in their official capacities.

Finally, Defendants Miksa, Patrick, and Thomas argue that the claims against them in their individual capacities should be dismissed for failure to allege that they were individually involved in any alleged misconduct. Plaintiff responds that her claims against these Defendants are viable because (1) Defendants Patrick and Thomas were on the disciplinary body that imposed sanctions on Plaintiff, and (2) Defendant Miksa made the final determination upholding the disciplinary decision. The Court already is dismissing Plaintiff's constitutional and failure to accommodate claims. That leaves for consideration Plaintiff's ADA, retaliation, and breach of contract claims.

Plaintiff does not allege that she had a contract with these individual Defendants. In fact, Plaintiff does not allege that she had a contract with any of the individual Defendants. Thus, the Court doubts that Plaintiff will be able to maintain a breach of contract claim against any of the individual Defendants. Plaintiff does not allege that the individual defendants instructed anyone not to write letters of recommendation on Plaintiff's behalf. The Court therefore also questions whether Plaintiff will be able to bring a retaliation claim against any of the individual Defendants. Finally, the Court questions whether Plaintiff can bring ADA claims against any individual Defendants, as there is no individual liability under the ADA. *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) (collecting cases).

However, because Defendants did not explicitly raise these arguments and because Defendants only moved for dismissal of claims against certain of the individual Defendants, the Court will give the parties an opportunity to address these points in a supplemental brief. *Lee v.*

*Nasatir*, 671 F. App'x 388 (7th Cir. 2016) ("A district court can dismiss defective claims *sua sponte*, but ordinarily the judge should give the plaintiff an opportunity to respond to the perceived defect."). The parties are given until August 23, 2019 to file a supplemental brief of no more than five pages addressing whether Plaintiff's ADA, retaliation, and breach of contract claims against all of the individual Defendants should be dismissed.

## V. Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendants' motion to dismiss [34]. The parties are given until August 23, 2019 to file a supplemental brief of no more than five pages addressing whether Plaintiff's ADA, retaliation, and breach of contract claims against all of the individual Defendants should or should not be dismissed. The case is set for further status on September 3, 2019 at 9:00 a.m.


Dated: August 9, 2019

_____
Robert M. Dow, Jr.
United States District Judge