IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>MCHENRY COUNTY COLLEGE, TONY MIKSA, in his individual capacity, CHRIS GRAY, in his individual capacity, and UNKNOWN OFFICIALS OF MCHENRY COUNTY COLLEGE in their individual capacities,<br><br>Defendants. | Case No. 17 cv 4247<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Jane Doe ("Plaintiff"), brought this lawsuit against McHenry County College ("the College"), Tony Miksa ("Miksa"), and Chris Gray ("Gray") (collectively, "Defendants"). Plaintiff alleges that Defendants discriminated against her based on her disability and retaliated against her for filing this lawsuit. Defendants move to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For reasons stated herein, Defendants' Motion to Dismiss [75] is granted in part and denied in part.

I.  **Background**

Plaintiff's complaint brings three claims, for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count I), breach of contract (Count II), and retaliation under 42 U.S.C. § 1983. (Count III). (TAC p.1). The

1

following factual allegations are taken from the Third Amended Complaint (Dkt. 68) ("TAC" or "complaint") and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Plaintiff was a student at all relevant times at the College, a county institution of higher education operated by McHenry County. TAC ¶¶2-3. Plaintiff is disabled, based on her autism diagnosis. *Id*. ¶5. The result of her disability is that she is extremely literal-minded and cannot read body language, understand sarcasm, or detect lies. *Id*. The College has been aware of and had a record of Plaintiff's disability since 2009. *Id*. ¶7.

On or around May 11, 2015, Plaintiff received notice to meet with Talia Koronkiewicz, Manager of Student Conduct and Campus Life at the College and the campus official then in charge of student discipline, to discuss "possible violations of" the College's Student Code of Conduct (the Student Code). *Id*. ¶¶8, 10. Koronkiewicz had been investigating and documenting allegations of Plaintiff's alleged inappropriate behavior in the student lounge since at least May 1, 2015. These allegations involved claims of nonconsensual touching, unwanted physical closeness, and shaking the bottom of her bra cups (the "boobie dance") in ways that made other students uncomfortable. *Id*. ¶11. Koronkiewicz reported that three students made these allegations, though the students did not confront Plaintiff herself. *Id*. ¶12. Plaintiff alleges that on all occasions, she gave students written or digital consent forms explaining her cognitive limitations and asking for consent to touch or to engage in other intimate behavior that might call for consent. *Id*. ¶13.

2

Koronkiewicz interviewed Plaintiff on May 13, 2015; Koronkiewicz's notes state that they "discussed" Plaintiff's "excessive contact without asking." *Id.* ¶14. The notes did not document that Plaintiff admitted to such contact. *Id.* The notes reported several instances of inappropriate behavior, but Plaintiff alleges that these statements in Koronkiewicz's notes were largely false, incomplete, and misleading. *Id.* ¶¶14-15. Plaintiff did not admit knowing that her conduct made people uncomfortable without their telling her this. *Id.* ¶15. During the May 13 meeting, Koronkiewicz told Plaintiff, "you need to learn to read body language. Everyone else can, so can you. If you can't you can't receive or give consent." *Id.* ¶16. Also during the meeting, Plaintiff asked Koronkiewicz to be interviewed by an advisor or person with knowledge of and expertise in autism so that the disciplinary board could have the benefit of advice and appraisal by someone with professional knowledge of Plaintiff's disability. *Id.* ¶17. Two days later, Koronkiewicz rejected Plaintiff's request for that accommodation and did not propose any alternative. *Id.*

On June 3, 2015, Koronkiewicz issued an official Sanctions Letter (Sanctions Letter) stating that the College disciplinary body determined that Plaintiff had violated the Student Code provision regarding harassment, in particular because she had allegedly admitted to engaging in a sexually provocative "boobie dance" without consent, "[l]aying [sic] on top of and cuddling others without their consent," and "asking others to see pictures of [Plaintiff] in bondage." *Id.* ¶18. According to Plaintiff, the Sanctions Letter's allegations about her conduct and statement that she admitted to any wrongdoing or to the specific acts were false. *Id.* ¶19. The Sanctions Letter

3

imposed the following sanctions on Plaintiff: a one year suspension and ban from the College starting June 11, 2017 [sic][1], requiring her to provide a personal statement in a reenrollment application about the negative effects of sexual harassment, and required sexual harassment training. *Id.* ¶20. Plaintiff filed an appeal of the Sanctions Letter decision. *Id.*

Before June 17, 2015, Plaintiff requested that an attorney be allowed to speak on her behalf at the appeals hearing. *Id.* ¶21. That request was rejected, but she was permitted to have an advisor speak on her behalf. *Id.* On June 24, 2015, Koronkiewicz provided Plaintiff a letter setting July 29, 2015 as the hearing date for the appeal with a deadline of July 15, 2015 for Plaintiff to provide an oral statement, witness list and documents. *Id.* ¶22. The hearing was held on August 12, 2015. *Id.* ¶23. After the hearing, the Student Appeals Board issued a Decision, signed by Koronkiewicz, and dated August 20, 2015, which upheld the Sanctions Letter decision. *Id.* ¶25. The basis of the decision was Plaintiff's alleged admissions on May 13, 2015 of physical contact without consent and being told by friends that her behavior may be unethical, as well as allegedly saying she was not sure if she understood consent. *Id.* The Decision also stated that Plaintiff admitted to knowing that her behavior made some people uncomfortable but she had learned that people do not tell her this. *Id.* ¶26. The Decision explained that three witness statements "corroborated" Plaintiff's "admissions." *Id.* Except for the statement that Plaintiff reported at the hearing that

---

[1] As this Court previously noted, the Court suspects this June 2017 date is a typographical error that should state June 2015. (Dkt. 51, n.2).

she always obtained express consent, each of the statements in the Decision was false. *Id*.

Plaintiff appealed the Student Appeals Board Decision to College Vice President Tony Miksa. *Id*. ¶28. On September 11, 2015, Miska upheld the Decision and sanctions. *Id*. Miska credited Koronkiewicz's findings and the witnesses Koronkiewicz relied on. *Id*. On June 6, 2017, Plaintiff filed the original complaint in this case. *Id*. ¶30. On October 3, 2017, the University of Illinois at Urbana-Champaign, where Plaintiff was then a student, opened disciplinary proceedings against Plaintiff claiming she had failed to disclose in a timely manner the disciplinary sanctions imposed on her by the College. *Id*. ¶31. On October 16, 2017, the College issued a directive via email, signed by Chris Gray, Vice President of Student and Academic Affairs, to College faculty, on information and belief at the direction of Miksa and/or Gray, instructing faculty not to provide references or letters of support for Plaintiff in connection with the disciplinary proceeding against her at the University of Illinois. *Id*. ¶32. In late October 2017, Rony Die, the dean who had initiated disciplinary proceedings against Plaintiff at the University of Illinois, contacted the College about disciplinary records that had been sealed or expunged and asked whether the records could be expunged. *Id*. ¶33. An unknown College official responded, "No I am unaware of any expungements." *Id*. Plaintiff alleges that the disciplinary file shows the College released some information to the University of Illinois. *Id*.

On August 9, 2019, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's second amended complaint. (Dkt. 51). The Court dismissed Plaintiff's procedural and substantive due process claims. The Court denied the motion to dismiss Plaintiff's ADA claim based on intentional discrimination, but dismissed Plaintiff's ADA failure to accommodate claim as time-barred.[2] Plaintiff's retaliation and breach of contract claims survived the motion to dismiss. Finally, the Court dismissed Plaintiff's claims against the individual Defendants in their official capacities, and questioned the viability of claims against certain defendants in their individual capacities but did not decide that issue.[3]

## II. Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts

---

[2] The Court ruled that although any intentional discrimination claim based on conduct occurring before June 3, 2015 is time-barred, evidence of discrimination occurring before that day may be relevant to Plaintiff's intentional discrimination claim. (Dkt. 51 at 18).

[3] The Court gave parties leave to file supplemental briefing on that issue. Defendants filed a supplement (Dkt. 59). Instead of filing a supplemental brief, Plaintiff filed the Third Amended Complaint.

plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

**III. Analysis**

Defendants move to dismiss all of Plaintiff's claims with prejudice. Plaintiff does not dispute Defendants' interpretation that Counts I and II (ADA and breach of contract) are brought against the College and Count III (retaliation under § 1983) is brought against all of the Defendants. (Dkt. 76 at 1-2; Dkt. 83).

**A. ADA (Count I)**

Plaintiff alleges that Defendants discriminated against her based on her disability in violation of Title II of the ADA. Defendants argue that Plaintiff fails to state a

7

claim under the ADA because she fails to allege: (1) that Defendants acted intentionally on the basis of her disability; (2) a causal connection between her disability and the College's conduct; and (3) that she was "otherwise qualified" to participate in the College's programs.

"Title II of the ADA prohibits public entities from excluding, denying benefits to, or discriminating against someone because of that person's disability." *Mayle v. City of Chi.*, 803 F. App'x 31, 32 (7th Cir. 2020). Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." A prima facie case of discrimination under the ADA requires a plaintiff to show: "(1) that he suffers from a disability as defined in the [ADA], (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." *Novak v. Bd. of Trs.*, 777 F.3d 966, 974 (7th Cir. 2015). Defendants do not dispute that Plaintiff is disabled because of her autism.[4]

"To prove disability discrimination, a plaintiff must show that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionately impacts disabled people." *CTL v. Ashland Sch. Dist.*, 743 F.3d 524, 528-29 (7th Cir. 2014) (internal citations and quotations omitted). Plaintiff's theory is based on the first

---

[4] Defendants refer to Plaintiff's "alleged disability" (Dkt. 76 at 6) but do not actually challenge that allegation in their motion to dismiss.

8

category—intentional discrimination. TAC p.1, ¶¶35-36. The Seventh Circuit has held that "a plaintiff can establish intentional discrimination in a Title II damage action by showing deliberate indifference," which requires "both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Lacy v. Cook Cty.*, 897 F.3d 847, 863 (7th Cir. 2018) (internal citations and quotations omitted).

Defendants contend that Plaintiff alleges only a "single, isolated comment" by Koronkiewicz on May 13, 2015 which is not enough to state a claim for intentional discrimination under the ADA. (Dkt. 76 at 5). Plaintiff responds that her complaint shows a pattern of deliberate indifference. She alleges that Defendants rejected her request to be interviewed by a professional with experience with autism in order for the College officials to better understand her disability during the disciplinary proceedings. *See* TAC ¶35. The College twice upheld sanctions against Plaintiff, decisions Plaintiff claims were based on findings that were both false and not informed by the advice of a professional. *Id.* ¶¶18–19, 25–29.

These allegations are sufficient to state a claim of intentional discrimination under Title II of the ADA at this pleading stage. In *Lacy*, the Seventh Circuit rejected a higher standard for proving intentional discrimination, citing the purpose of Title II of the ADA to "combat discrimination that is most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." 897 F.3d at 863 (quoting *Alexander v. Choate*, 469 U.S. 287, 296, 105 S. Ct. 712, 717 (1985)). Plaintiff's allegations that the College made disciplinary decisions based on

9

false information and without the advice of an autism professional, which she requested, are enough to raise the plausible inference that the College knew that a harm to a federally protected right was substantially likely and failed to act upon that likelihood. *See id.*

The finding that Plaintiff's claim survives dismissal is supported by other case law as well. *See Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015) ("Reed's allegations that the hospital, with knowledge of her disability, purposely denied her access to the computer that helps her communicate, permit an inference of intentional discrimination sufficient to support a claim for compensatory damages. That claim is legally sufficient, at least at the pleading stage."); *see also Audia v. Briar Place, Ltd.*, 2018 U.S. Dist. LEXIS 68950, at *6 (N.D. Ill. Apr. 24, 2018) (denying motion to dismiss Rehabilitation Act claim based on intentional disability discrimination, finding that "[r]equests that go unanswered can support a finding of deliberate indifference.");[5] *Oleszczak v. Ill. Dep't of Children & Family Servs.*, 2018 U.S. Dist. LEXIS 117786, at *14 (N.D. Ill. July 16, 2018) (Title II ADA claim survived where plaintiff alleged DCFS made false and baseless claims about her from which a reasonable inference could be drawn that DCFS targeted plaintiff due to her mental health issues). And Defendants' reliance on *Doe v. Galster*, 768 F.3d 611 (7th Cir. 2014) is not convincing since that case was decided at the summary judgment stage.

---

[5] *See A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) ("The relevant provisions and implementing regulations of the Rehabilitation Act and the ADA are 'materially identical.' As a result, 'courts construe and apply them in a consistent manner.'") (citations omitted).

Defendants next argue that Plaintiff fails to allege a sufficient causal nexus between her disability and the College's conduct. The Seventh Circuit applies a "but for" causation standard in ADA cases. *See Kurtzhals v. Cty. of Dunn*, 2020 U.S. App. LEXIS 25182, at *6 (7th Cir. Aug. 10, 2020); *A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018). Defendants assert the Plaintiffs' complaint shows she "was disciplined not because of her disability but because she violated" the Student Code. (Dkt. 76 at 5). This is not an accurate characterization of the complaint. Plaintiff does not concede that she violated the Student Code.

The only case relied on by Defendants to argue that Plaintiff has not sufficiently alleged causation is *Gillard v. Nw. Univ.,* 2008 WL 11417125 (N.D. Ill. Aug. 25, 2008), *aff'd,* 366 F. App'x 686 (7th Cir. 2010). In *Gillard,* the court found "*no* indication [] provided [in the complaint] as to why Gillard believes Northwestern's actions were taken on account of her protected status." *Id*. at *4 (emphasis added). That is not the case here. As discussed, Plaintiff alleges that the College knew about her disability since 2009 and disciplinary decisions were made against her based on false information and without the benefit of professional expertise. The plausible inference is that she was disciplined by and suspended from the College "by reason of" her autism. *See* 42 U.S.C. § 12132. Whether Plaintiff can *prove* that is a question for another day.

Finally, Defendants argue that Plaintiff has not alleged that she was "otherwise qualified" to participate in the College's programs. Defendants do not cite controlling case law to support the proposition that Plaintiff must make this specific allegation

11

to avoid dismissal of her Title II ADA claim. Instead Defendants cite out of circuit decisions decided on summary judgment. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454 (4th Cir. 2012); *Grant-Davis v. Bd. of Trs.*, 2017 U.S. Dist. LEXIS 136083, at *72 (D.S.C. May 24, 2017); *Childress v. Clement,* 5 F. Supp. 2d 384 (E.D. Va. 1998). Further, the "otherwise qualified" analysis requires an "individualized inquiry" that will require more factual development. *See Washington v. Ind. High Sch. Ath. Ass'n*, 181 F.3d 840, 851 (7th Cir. 1999). At this stage, Plaintiff has pled enough for the Court to infer that she was qualified to participate as a student at the College, but her disability caused her suspension from the College.

The motion to dismiss Plaintiff's ADA claim is denied.

### B. Breach of Contract (Count II)

Plaintiff alleges that she had a contractual relationship with the College embodied in the Student Code, and the College breached the Student Code by discriminating against her and not providing her a reasonable accommodation. TAC ¶¶4, 35, 40-41. As this Court noted in its prior opinion, "[i]n Illinois, 'a college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins.'" (Dkt. 51 at 21, quoting *Diperna v. Chi. Sch. of Prof'l Psychology*, 893 F.3d 1001, 1006-07 (7th Cir. 2018)).

However, as Defendants argue, "a promise to do something one is already obligated to do is no consideration and creates no new obligation." *Moehling v. W. E. O'Neil Constr. Co.,* 20 Ill. 2d 255, 266, 170 N.E.2d 100, 106 (1960). Here, the provision Plaintiff relies on in the Student Code states: "In compliance with the . . .Americans

12

with Disabilities Act, … the College prohibits discrimination and harassment based on . . . disability"). TAC p.2. General non-discrimination statements such as these in student codes or handbooks do not give rise to enforceable contractual promises. In *Harris v. Adler Sch. of Prof'l Psychology*, 309 Ill. App. 3d 856, 861, 243 Ill. Dec. 414, 419, 723 N.E.2d 717, 722 (1999), the Illinois appellate court held that "the racial-discrimination provision [in the student catalog] was only a general reference of adherence to existing law concerning discrimination," and was not "an independent contractual obligation." The *Harris* court therefore affirmed the dismissal of the breach of contract claim based on that provision of the student catalog. *Id. See also Galligan v. Adtalem Glob. Educ. Inc.,* 2019 U.S. Dist. LEXIS 17218, at *16 (N.D. Ill. Feb. 4, 2019) (distinguishing statements in student handbook regarding compliance with federal and state laws from specific promises to adhere to disability and examination protocols). The statement by the College that it prohibits discrimination and harassment based on disability in compliance with the ADA is a general statement of compliance with existing anti-discrimination law. It did not give rise to a specific independent contractual obligation.

Citing 34 C.F.R. § 104.4(a), Plaintiff appears to argue that she was a third-party beneficiary to the College's contractual arrangement to receive federal funds from the government. (Dkt. 83 at 6). First, this is not what Plaintiff's complaint alleges. She alleges that the College "breached its state law contract in the [Student] Code with Plaintiff by failure to reasonably accommodate her disability." TAC ¶41. Plaintiff cannot raise a new breach of contract claim that was not asserted in the complaint.

13

It is "axiomatic" that a "plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Second, Plaintiff has not cited any authority that supports her argument that the College's receipt of federal funding means that she can sue the College for breach of contract under state law as a "third-party beneficiary".

Plaintiff does not state an actionable breach of contract claim. Count II is dismissed with prejudice.

### C. Retaliation (Count III)

Plaintiff alleges retaliation by Defendants under § 1983. TAC p. 1, ¶37. As Defendants argue, "Section 1983 does not create substantive rights but operates as 'a means for vindicating federal rights conferred elsewhere.'" *Tate v. Dart*, 2019 U.S. Dist. LEXIS 41341, at *6 (N.D. Ill. Mar. 14, 2019) (citing *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011)). In *Tate*, the court dismissed plaintiff's § 1983 claim finding that plaintiff "provide[d] no reason to believe that the ADA's comprehensive remedial scheme leaves room for enforcement of the ADA via § 1983." *Id.* at *9-10. *See also Jones v. Reg'l Transp. Auth.*, 2012 U.S. Dist. LEXIS 98119, at *21 (N.D. Ill. July 16, 2012) ("[plaintiff] cannot invoke § 1983 to enforce the ADA.")

In her response brief, Plaintiff argues that she brings both "an ADA retaliation claim under the ADA, 42 U.S.C. 12204(a)" and "a parallel § 1983 retaliation claim under that statute." (Dkt. 83 at 8). Plaintiff says the § 1983 claim is an "access to the courts" claim. "Denying a prisoner access to the courts violates the First Amendment." *Henderson v. Frank*, 293 F. App'x 410, 413 (7th Cir. 2008). "The right

14

of access to courts is violated only when a prisoner is denied access and suffers actual injury as a result." *Green v. Walker*, 398 F. App'x 166, 168 (7th Cir. 2010). Plaintiff does not cite any case law showing this type of claim is extended to individuals who are not prisoners. Moreover, Plaintiff does not allege that she was denied access to the court or that she was harmed by any alleged denial of that access.

As to Plaintiff's argument that she is asserting retaliation under the ADA, this is not what she alleged in her complaint. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (a "complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests.") (citation omitted). And again, she cannot amend her complaint in her response brief. *Pirelli Armstrong Tire Corp.*, 631 F.3d at 448.

Plaintiff's retaliation claim, whether based on § 1983 or the ADA, is dismissed with prejudice.[6]

## IV. Conclusion

For the stated reasons, Defendants' Motion to Dismiss [75] is granted in part and denied in part.

Counts II and III are dismissed with prejudice. Consequently all of the individual defendants are dismissed. (This includes any "unknown [College] officials"). Count I,

---

[6] Plaintiff has now had three opportunities to amend her complaint in this case, which was filed in 2017. The Court finds that dismissing Counts II and III with prejudice is warranted. *See Haywood*, 887 F.3d at 335 ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing.")

the claim for intentional discrimination under Title II of the ADA against the College, remains.

E N T E R:

Dated: September 1, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge