IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br>v.<br><br>MCHENRY COUNTY COLLEGE, TONY MIKSA, in his individual capacity, CHRIS GRAY, in his individual capacity, and UNKNOWN OFFICIALS OF MCHENRY COUNTY COLLEGE in their individual capacities,<br><br>    Defendants. | Case No. 17-cv-4247<br><br>Judge Mary M. Rowland<br><br>Magistrate Judge Young B. Kim |

**<u>DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO COUNT I OF PLAINTIFF'S THIRD AMENDED COMPLAINT</u>**

Defendants MCHENRY COUNTY COLLEGE, TONY MIKSA, CHRIS GRAY, and UNKNOWN OFFICIALS OF MCHENRY COUNTY COLLEGE (collectively "Defendants"),[1] by and through their attorneys, Frank B. Garrett III and Emily P. Bothfeld of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., and for their Answer and Affirmative Defenses to Count I of Plaintiff's Third Amended Complaint, state as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because it arises under and the ADA, 42 U.S.C § 12132. *et seq*. Supplemental jurisdiction for state law contract claims exists under 28 U.S.C. § 1367 because the complained of conduct arises from a common factual

---

[1] Plaintiff's Third Amended Complaint consists of three counts and names the following defendants: McHenry County College ("College"); Tony Miksa, in his individual capacity; Chris Gray, in his individual capacity; and Unknown Officials of McHenry County College, in their official capacities. On September 1, 2020, the Court dismissed Counts II and III of Plaintiff's Third Amended Complaint, with prejudice. The Court also dismissed Plaintiff's claims against Defendants Gray, Miksa, and Unknown McHenry County College Officials in their entirety. Therefore, to the extent the allegations in Plaintiff's Third Amended Complaint relate exclusively to Counts II and/or III, or are directed toward Defendants Gray, Miksa and/or Unknown McHenry County College Officials, no response is required.

nexus. Venue in this District is proper, because all or a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois. 28 U.S.C. § 1391.

**ANSWER:** To the extent the allegations in Paragraph 1 are directed toward Defendants Miksa, Gray and/or Unknown McHenry County College Officials, no response is required because Plaintiff's claims against the individual Defendants were dismissed pursuant to the Court's September 1, 2020 Order.[2] To the extent the allegations in Paragraph 1 are directed toward the College, the College admits that jurisdiction and venue are proper.

## FACTUAL AND PROCEDURAL BACKGROUND

2. Jane Doe is a student at all pertinent times involved here enrolled in McHenry County College (MCC).

**ANSWER:** The College admits that Plaintiff was enrolled as a student at McHenry County College from 2009 until 2015.

3. MCC is a county institution of higher education operated by McHenry County.

**ANSWER:** The College admits that it is an institution of higher education. The College denies the remaining allegations in Paragraph 3.

4. Plaintiff had a contractual relation with MCC partly embodied in the Student Code of Conduct giving her certain rights and responsibilities detailed in this Second Amended Complaint.

**ANSWER:** Paragraph 4 relates exclusively to Count II of Plaintiff's Third Amended Complaint, which was dismissed pursuant to the Court's September 1, 2020 Order; therefore, no response is required.

5. Plaintiff is disabled, diagnosed with autism, a result of which is that she is extremely literal-minded and cannot read body language, understand sarcasm, or detect lies.

**ANSWER:** The College admits that Plaintiff had a diagnosis of Autism during the period of time that Plaintiff was an enrolled student at the College. The College lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5, and therefore denies those allegations.

---

[2] Defendants repeat and reassert this response with regard to each Paragraph that contains allegations referring to Defendants Miksa, Gray and/or Unknown McHenry County College Officials.

6. She is also a transgender MtF woman. This is not a disability.

**ANSWER:** The College admits the allegations in Paragraph 6.

7. MCC has been aware of Plaintiff's disability (autism) since 2009, and has it on record.

**ANSWER:** To the extent the allegations in Paragraph 7 refer to Plaintiff's diagnosis during the period of time that Plaintiff was an enrolled student at the College, the College admits that it was aware of Plaintiff's diagnosis of Autism beginning in 2009 and that the College maintains documentation reflecting Plaintiff's Autism diagnosis. To the extent the allegations in Paragraph 7 refers to Plaintiff's current diagnosis or diagnoses, the College lacks sufficient knowledge or information sufficient to form a belief as to those allegations, and therefore denies those allegations.

8. In 2009, 2012 and 2013, Plaintiff was subject to student discipline. The 2009 decision involved exclusion from campus for three months and required therapy on the supposed basis that Plaintiff had been suicidal. In 2012 and 2013, Talia Koronkiewicz, Manager of Student Conduct and Campus Life at MCC, offered Plaintiff the option of submitting documentation as part of a request that records relating to these disciplinary actions and the sanctions themselves be expunged. Plaintiff submitted these requests and documentation. Available records of these incidents contain no reports or other evidence of suicidal ideation, but only that Plaintiff was nonverbal, nonresponsive and curled up in a fetal position. In or around 2013, Koronkiewicz verbally told Plaintiff that these findings and sanctions were made in error because their basis were autistic "shutdowns" not suicidal ideation, and had been expurgated from her record. In Vice President Tony Miksa's Sept. 11, 2015, Letter upholding the findings and sanctions here in dispute, he stated that such expurgation was not and could not lawfully be done. In 2010, after Plaintiff sued MCC over this incident, MCC established a rule that suicidal ideation was not a valid basis for discipline.

**ANSWER:** The College admits that in 2009, Plaintiff was placed on an Interim Safety Suspension as a result of various incidents in which Plaintiff made statements indicating that she was considering suicide or self-harm and of Plaintiff's subsequent refusal to participate in supportive services offered by the College. The

3

> College further admits that in 2012, Plaintiff asked Talia Koronkiewicz "how to get potential suicides removed from [her] file" and that Ms. Koronkiewicz informed Plaintiff of steps that she could take if she wished to challenge certain information contained in her file as erroneous or inaccurate. The College denies all remaining allegations in Paragraph 8.

9. The 2012 and 2013 incidents involved prohibitions on future attendance as an MCC student of meetings of the Midwest conference of LGBTQ persons because of allegations of breaking curfew or going unattended after curfew hours in supposed violation of a field trip contract. In the field trip contracts for 2012 and 2013, there are no clauses imposing a curfew or requiring chaperones after any particular time. Plaintiff was punished for violating contract provisions that did not exist.

**ANSWER:** The College admits that during the 2013-2014 academic year, Plaintiff was not permitted to attend a College-sponsored trip to the Midwest Bisexual Lesbian Gay Transgender Asexual College Conference. The College denies all remaining allegations in Paragraph 9.

10. On or around May 11, 2015, Plaintiff received notice to meet with Koronkiewicz, the campus official then in charge of student discipline, to discuss "possible violations of the MCC Student Code (the Code)."

**ANSWER:** The College admits that on May 11, 2015, Koronkewicz issued Plaintiff a letter, notifying her that the Student Conduct Office had received and reviewed information regarding an incident in which Plaintiff may have been involved and in which Plaintiff may have violated certain sections of the Student Code of Conduct. The College further admits that the May 11, 2015 letter requested that Plaintiff make an appointment for a pre-conference meeting with the Student Conduct Officer within two (2) business days of Plaintiff's receipt of the letter. The College denies all remaining allegations in Paragraph 10.

11. Koronkiewicz had been investigating and documenting allegations of Plaintiff's supposed inappropriate behavior in the student lounge (the "Belly") since at least May 1, 2015. These allegations involved claims of nonconsensual touching, unwanted physical closeness, and shaking the bottom of her bra cups (the "boobie dance") in ways that made other students uncomfortable.

Koronkiewicz reported statements from three student informants but not from a fourth who attended the meeting at which Koronkiewicz took notes about Plaintiff's alleged behavior. Her notes do not include reference to the fourth student or anything the student said.

**ANSWER:** The College admits that on or about May 1, 2015, Koronkiewicz received a report that Plaintiff had engaged in inappropriate behavior toward other students, potentially constituting a violation of the Student Code of Conduct. The College further admits that the allegations included, but were not limited to, allegations that Plaintiff (a) engaged in a "boobie dance" in front of other students repeatedly where Plaintiff cupped her breasts and shook them provocatively in front of others without consent; (b) lay on top of and cuddled with others without asking consent; and (c) asked others to see pictures of Plaintiff in bondage. The College further admits that Koronkiewicz initiated an investigation into the report, which involved interviews with student witnesses. The College denies all remaining allegations in Paragraph 11.

12. Koronkiewicz said her informants said that that no one confronted Plaintiff because she is "dramatic and makes people feel bad." They said that some who did not like Plaintiff's alleged conduct left without saying anything so as not to make Plaintiff feel bad. They also said Plaintiff would "nestle," "cuddle" or "lie on" other students "without asking." One interviewee said that Plaintiff was "always touching her [the interviewee]" and the interviewee would always tell Plaintiff to stop.

**ANSWER:** The College admits that certain student witnesses who were interviewed regarding Plaintiff's conduct stated that Plaintiff's behaviors made others uncomfortable, but that no one confronted Plaintiff because she was "dramatic and ma[de] people feel bad." The College further admits that, when asked whether students told Plaintiff that her behavior was inappropriate, certain student witnesses responded that "some people [did] and some people [didn't] want to make her feel bad so they just [got] up and [left]." The College further admits that student witnesses stated that Plaintiff would lie on people without asking and that Plaintiff engaged in excessive touching without permission repeatedly. The College denies all remaining allegations in Paragraph 12.

13. On all occasions, Plaintiff distributed written or digital consent forms (the "contract") for other students to sign, explaining her cognitive limitations and asking for consent to touch or to engage in other intimate behavior that might call for consent. She would talk about the contract

5

with people with whom she wished to interact. When someone declined to sign, she would not engage in intimate behavior with those students, except one intimate then-friend, Brandon Marciel. The point of these forms was to ensure she had express consent.

**ANSWER:** The College denies the allegations in Paragraph 13.

14. Koronkiewicz interviewed Plaintiff on May 13, 2015. Koronkiewicz's notes state that they "discussed" Plaintiff's "excessive contact without asking." The notes do not report any admission of such touching. The notes say that Plaintiff told Koronkiewicz that Plaintiff touched her breast in the "boobie dance" for medical reasons, not as a sexual provocation. The notes say that Plaintiff has "asked if people want to see her bondage gear, but no nudes." The notes report that Plaintiff said that her "friends have told her she may be unethical and now [she] doesn't know if she understands consent." The notes say that Plaintiff admitted to knowing that her conduct made people uncomfortable but she said she had learned that people do not tell her this. The notes also say she wrote a phone text in which she discussed another student [name redacted] as "the object being cut up [with a sword] at a party," which was, they say, intended as a joke and was inappropriate.

**ANSWER:** The College admits that Koronkiewicz interviewed Plaintiff on May 13, 2015. The College admits that Koronkiewicz's notes state:

   (a) That Koronkiewicz and Plaintiff discussed Plaintiff's excessive contact on students without asking;
   (b) That Plaintiff stated she "does the booby dance to prevent cancer because as a transgender person she has more chance of getting cancer;"
   (c) That Plaintiff stated she "has asked if people want to see her bondage gear and pictures, but no nudes;"
   (d) That Plaintiff stated that her "friends have told her that she may be unethical and now [Plaintiff] doesn't know if she understands consent;"
   (e) That Plaintiff stated she "learned through a friend that people will say it's ok to [Plaintiff] for fear of feeling bad;" and
   (f) That Plaintiff admitted to a "text exchange where she mentioned [another student] as the object getting cut up at [a] party," that Plaintiff "said she was

6

joking and didn't mean it literally," and that Plaintiff "agreed it was not appropriate to say."

The College denies all remaining allegations in Paragraph 14.

15. These statements in the notes are largely false, incomplete, and misleading. Plaintiff did say that "boobie dance" was done for medical reasons and not for any sexual purpose. Plaintiff told Koronkiewicz that the dance, done fully clothed, was a prophylactic for breast cancer and not a provocation, and this activity had a scientific medical basis. She stated that a lot of women students at MCC do this without getting in trouble, so she thought it was OK. Plaintiff told Koronkiewicz that she asked other student's consent to see photos of her "gear," but not of her wearing the gear, clothed or not, in part because no such pictures existed. She explained to Koronkiewicz that this inquiry was an attempt, sometimes successful, to gain consent. When consent was denied, she did not show pictures of her gear. Plaintiff did report that people in the Belly told her she might be unethical, but that she disagreed with that evaluation. Plaintiff did *no*t tell Koronkiewicz that she did not understand consent, but told Koronkiewicz that she, Plaintiff, did not understand *revocation* of consent *if it was not verbal or written and express*. Plaintiff did not "admit" knowing that her conduct made people uncomfortable without their telling her this, but rather acknowledged Koronkiewicz that told her this at the interview. Plaintiff always obtained express consent for any such interaction, either orally or writing or by text. Plaintiff did not tell Koronkiewicz that she had discussed cutting up a student with a sword, but had responded to an instance of Brandon Marciel's repeated comment to that he wanted to kill or injure that student, by inquiring about that student's name (over text) to express incredulity and disapproval.

**ANSWER:** The College denies the allegations in Paragraph 15.

7

16. In the May 13, 2015 interview, Koronkiewicz told Plaintiff, "you need to learn to read body language. Everyone else can, so can you. If you can't you can't receive or give consent."

**ANSWER:** The College denies the allegations in Paragraph 16.

17. At the May 13, 2015, interview, Plaintiff asked Koronkiewicz that she be interviewed by an advisor or person with knowledge of and expertise in autism so that the disciplinary board could have the benefit of advice and appraisal by someone who had professional knowledge of Plaintiff's disability. Two days later, on May 15, 2015, Koronkiewicz rejected the proposed accommodation without proposing any alternative.

**ANSWER:** The College denies the allegations in Paragraph 17.

18. On June 3, 2015, Koronkiewicz issued an official Sanctions Letter (the Letter) stating that the MCC "disciplinary body," including Flecia Thomas, Koronkiewicz's superior, and Juletta Patrick, Title IX Coordinator at MCC, determined that Plaintiff had "violated the [Code], Art. I, Sec C, harassment, in particular because she had supposedly *admitted* to engaging in a sexually provocative "boobie dance" without consent, "[l]aying [sic] on top of and cuddling others without their consent," and "asking others to see pictures of [Plaintiff] in bondage."

**ANSWER:** The College admits that on June 3, 2015, Koronkiewicz issued a letter to Plaintiff stating that the College disciplinary body had determined that Plaintiff violated Article VI, Section C of the Student Code of Conduct, which is titled "Harassment and Discrimination." The College further admits that the June 3, 2015 letter stated that Plaintiff had admitted to:

- Engaging in a "boobie dance" in front of other students repeatedly where Plaintiff cupped her breasts and shook them provocatively in front of others without consent;
- Laying on top of and cuddling others without asking consent; and
- Asking others to see pictures of Plaintiff in bondage.

The College denies all remaining allegations in Paragraph 18.

19. Both the allegations of the conduct detailed in the Letter and statement that Plaintiff had admitted to any wrongdoing or the specific acts alleged are false. As noted in ¶ 14, Plaintiff's "boobie dance" was not sexual in nature but medical and was done by many other women students. Plaintiff has never lain on top of or cuddled with anyone without express consent. Plaintiff never asked anyone to see pictures of her in bondage, and in fact there were no such pictures, but only permission to show pictures of gear, which she never did unless permission was granted.

**ANSWER:** The College denies the allegations in Paragraph 19.

20. The Letter imposed on Plaintiff the following sanctions: a one year suspension and ban from MCC starting June 11, 2017, requirements requiring her to provide, on a reenrollment reapplication, a "personal statement," undergo sexual harassment training, and describe [in the personal statement] what she could do personally to "show or encourage" the negative effects of sexual harassment." She was advised she could file a notice of intent to appeal by June 17, 2015, which she did.

**ANSWER:** The College admits that the June 3, 2015 disciplinary determination included, as a sanction, a one-year suspension beginning on June 11, 2017. The College further admits that, as conditions upon re-enrollment at the College, Plaintiff was required to prepare and submit a personal statement, undergo sexual harassment training and engage in a reflection exercise, to include reflection on what Plaintiff personally could do to encourage or show other college students the negative effects of sexual harassment. The College further admits that the June 3, 2015 letter informed Plaintiff of her right to appeal her suspension by June 17, 2015, and that Plaintiff filed a Notice of Appeal by the June 17, 2015 deadline. The College denies all remaining allegations in Paragraph 20.

21. Sometime before June 17, 2015, Plaintiff requested, as an ADA and contractual accommodation, that counsel be allowed to speak on her behalf at the Appeals hearing to be scheduled. On June 18, this request was rejected, but she was allowed to have an advisor, not an attorney, speak on her behalf.

**ANSWER:** The College admits that, sometime before June 17, 2015, Plaintiff requested that an attorney be allowed to speak on her behalf at the Student Appeals Board hearing. The College further admits that Plaintiff was permitted to have an advisor speak on her behalf at the Student Appeals Board hearing, and that the College's definition of "advisor" did not include an attorney. The College denies all remaining allegations in Paragraph 21.

22. On June 24, 2015, Koronkiewicz gave Plaintiff a letter dated the previous day, setting July 29, 2015 as the hearing date with a deadline of July 1, 2015 [possibly a typo for July 15] to provide a witness list and to provide by July 15, 2015 at 9 a.m., an oral statement and copies of all documents Plaintiff was submitting to support her appeal. Plaintiff was banned from campus, so she could only gather material remotely. She did not make the 9 a.m. deadline. Koronkiewicz emailed her at 9.30 to say that the deadline had passed. Plaintiff wrote Koronkiewicz back to say that her witnesses had not been contacted, and she therefore requested an extension. Koronkiewicz replied that she had spoken to one of them in May and that the statements of three people would be included in but they would not be allowed to testify.

**ANSWER:** The College admits that on June 24, 2015, Koronkiewicz hand delivered a letter to Plaintiff, which was dated June 23, 2015, and which notified Plaintiff that her Student Appeals Board hearing had been scheduled for July 29, 2015. The College further admits that the June 23, 2015 letter set a deadline of July 1, 2015 by which Plaintiff was required to notify the Manager of Student Conduct of any witnesses that Plaintiff believed were relevant to her appeal request and a deadline of July 15, 2015 by which Plaintiff was required to submit all materials that she wished to use as evidence during the hearing. The College further admits that Plaintiff did not submit any materials to the Student Conduct Office by the July 15, 2015 deadline. The College denies all remaining allegations in Paragraph 22.

23. The hearing was held on Aug. 12, 2015. MCC's record of evidence (the "Packet"), contained the witness statements cited above in ¶¶ 11, 12, 14, and 15. It also contained two interviews "written" by Koronkiewicz, on July 15, 2015. In these, one witness stated that they believed that Plaintiff "acts appropriately" and the witness has never witnessed any nonconsensual touching. The other stated that Plaintiff stopped touching and apologized when asked to cease

physical contact that had become unwelcome, and that other students had said that Plaintiff's touching and comments made them uncomfortable, but they had not told her. The witness thought that these people gave Plaintiff nonverbal cues, which, as the witness stated they believed, do not work with someone autistic.

**ANSWER:** The College admits that the Student Appeals Board hearing was held on August 12, 2015 and that the packet of evidence presented by the administration included witness statements, as well as interview notes prepared by Koronkiewicz reflecting two student interviews that took place on July 15, 2015. The College denies all remaining allegations in Paragraph 23.

24. The Packet also contained a record of the incidents from 2009 and 2012, see ¶ 8, in a section in following a heading entitled "Relevant Student Conduct (Chronological Order)." Neither of these involved harassment or discrimination and their relevance was not explained until invoked in Miksa's final denial of Plaintiff's appeal in the Miksa Letter, Sept. 11, 2015.

**ANSWER:** The College admits that the administration's hearing packet included a section of documents titled "Relevant Student Conduct Interaction for [Plaintiff] (Chronological Order)." The College denies all remaining allegations in Paragraph 24.

25. After the appellate hearing, the Student Appeals Board (SAB) issued a Decision, signed by Koronkiewicz, dated Aug. 20, 2015, upheld the finding and sanctions. The basis of the decision was Plaintiff's supposed admissions, on May 13, 2015, of physical contact without consent and being told by friends that her behavior *may* be unethical, as well as supposedly saying she was not sure if she understood consent.

**ANSWER:** The College admits that on August 20, 2015, Koronkiewicz issued Plaintiff a letter, notifying her of the decision of the Student Appeals Board. The College further admits that the Student Appeals Board upheld the finding that Plaintiff violated Article VI, Section C ("Harassment and Discrimination") of the Student Code of Conduct, as well as the associated sanctions. The College further admits that the Student Appeals Board's August 20, 2015 written determination referenced Plaintiff's admission that she had touched, poked, lay upon and had excessive physical contact with students without requesting permission, Plaintiff's statement that her friends told her that she may be unethical, and Plaintiff's statement that she

11

>was not sure if she understood consent. The College denies all remaining allegations in Paragraph 25.

26. The Decision also stated that Plaintiff admitted to knowing that her behavior made some people uncomfortable but also that she said she had learned that people do not tell her this. The Decision noted that Plaintiff stated at the hearing that she always had consent for any physical contact. The Decision referenced statements by a complainant and three student witnesses, which "corroborated" her "admissions." It did not cite any standard of review, which according to the Code is "preponderance of the evidence." (Code, Art. IX, § B(12)). Each of these statements, except that Plaintiff always obtained express consent, is false. See ¶¶ 15 and 20 above.

**ANSWER:** The College admits that the August 20, 2015 letter indicates that Plaintiff admitted to knowing that her behaviors made some people uncomfortable and that Plaintiff learned that people do not tell Plaintiff that she makes them feel uncomfortable. The College further admits that the August 20, 2015 letter stated that, at the hearing, Plaintiff admitted that she engaged in physical behaviors but claimed she did so with the consent of all students with whom she made physical contact. The College denies all remaining allegations in Paragraph 26.

27. At or after the SAB hearing Koronkiewicz, when Plaintiff's advisor at the hearing asked whether Koronkiewicz was "judge, jury, and executioner," stated that Flecia Thomas and Juletta Patrick also participated in the initial decision before the June 3, 2015 Sanctions Letter, to find that Plaintiff had violated the Code and to impose the specified sanctions.

**ANSWER:** The College denies the allegations in Paragraph 27.

28. Plaintiff appealed both the finding and the sanction to Vice President Tony Miksa because under the Code, the Vice President makes all final decisions about student discipline. In the Miksa Letter, dated Sept. 11, 2015, he upheld the Decision and its findings and sanctions. Miksa credited the witnesses relied on by Koronkiewicz and reasserted her findings of purported facts.

**ANSWER:** The College admits that Plaintiff appealed the decision of the Student Appeals Board. The College further admits that Plaintiff's appeal was reviewed by Vice President of Academic & Student Affairs Tony Miksa, and that on September 11, 2015, Miksa issued a letter to Plaintiff, notifying her of his decision to uphold the findings and associated sanctions issued by the Student Appeals Board. The College denies all remaining allegations in Paragraph 28.

29. Miksa upheld the severity of the sanction on the basis of the record of the incidents from 2009 and 2012, see ¶ 8, following a heading entitled "Relevant Student Conduct (Chronological Order)," that Miksa stated would be considered only in the case of a finding of a violation of the Code, Art. VI, § C (harassment based on protected group status), which was not made. See ¶ 33 *et passim*.

**ANSWER:** The College admits that Miksa's decision to uphold the suspension sanction was based, in part, on Plaintiff's disciplinary history. The College denies all remaining allegations in Paragraph 29.

30. On June 6, 2017, Plaintiff filed her initial complaint in this case, alleging the violations set forth here as well as violations of 42 U.S.C. § 1983.

**ANSWER:** The College admits that Plaintiff's initial Complaint was filed on June 6, 2017 and that the Complaint included claims under 42 U.S.C. § 1983.

31. On October 3, 2017, the University of Illinois at Urbana-Champaign, where Plaintiff was then a student, opened disciplinary proceedings against Plaintiff on the grounds that she had failed to disclose the disciplinary sanctions imposed on her at MCC in a timely manner.

**ANSWER:** The College lacks sufficient knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31, and therefore denies those allegations.

32. On Oct. 16, 2017, after the present lawsuit was filed, MCC issued an email directive, signed by Chris Gray, Vice President of Student and Academic Affairs, to MCC faculty, on information and belief at the direction of Tony Miksa and/or Chris Gray, instructing them not to provide references or letters of support as representatives of MCC for Plaintiff in connection with student

13

disciplinary proceeding against her at the University of Illinois at Urbana-Champaign (UIUC). This was in retaliation for Plaintiff filing the present lawsuit.

**ANSWER:** Paragraph 32 relates exclusively to Count III of Plaintiff's Third Amended Complaint, which was dismissed pursuant to the Court's September 1, 2020 Order; therefore, no response is required.

33. In late October 2017, Rony Die, the dean who had initiated disciplinary proceedings against Plaintiff at UIUC, contacted MCC about disciplinary records that had been sealed or expunged, and which therefore would not have to have been disclosed to UIUC. He asked, "Can records be expunged?" An unknown official at MCC responded, "No I am unaware of any expungements." This was both nonresponsive and false. There *now* are no records of Plaintiff's supposed suicidality at MCC or any curfew or violation of any curfew at MCC. However, there once were, and these were expunged pursuant to legal action by Plaintiff against MCC in or around 2010 or at Plaintiff's personal requests while a student. MCC had no release for any information to provide to UIUC, but the disciplinary file shows it did release some information. This unauthorized release of disciplinary information from MCC was also retaliatory for filing the present lawsuit.

**ANSWER:** Paragraph 33 relates exclusively to Count III of Plaintiff's Third Amended Complaint, which was dismissed pursuant to the Court's September 1, 2020 Order; therefore, no response is required.

34. On August 9, 2019, this Court dismissed several of Plaintiff's counts, including her § 1983 counts, and against individual defendants in their official and individual capacities.

**ANSWER:** The College admits that on August 9, 2019, the Court dismissed Plaintiff's claims under Section 1983 and the Court dismissed Plaintiff's claims against various individual defendants in their official capacities. The College denies all remaining allegations in Paragraph 34.

**LEGAL PRINCIPLES AND CLAIMS**

35. Plaintiff's ADA rights not to be intentionally discriminated against and her contractual as well as her ADA rights (here time-barred) to reasonable accommodation and to be free from intentional discrimination from May 2015 through June 5, 2015, were violated when Koronkiewicz, knowing of Plaintiff's disability and that it would likely lead to damaging misunderstandings of the sort set out in rejected her request at the meeting of May 13, 2015, to be interviewed by a psychological professional with knowledge of autism, and proposed no alternative accommodation. The contractual disability non-discrimination and reasonable accommodation rights and remedies track the ADA's, but are not time-barred because the statute of limitations in Illinois for contract is ten years.

**ANSWER:** To the extent the allegations in Paragraph 35 relate to Count II of Plaintiff's Third Amended Complaint, no response is required because Count II of Plaintiff's Third Amended Complaint was dismissed pursuant to the Court's September 1, 2020 Order. To the extent the allegations in Paragraph 35 relate to Count I of Plaintiff's Third Amended Complaint, the College denies the allegations in Paragraph 35.

36. The imposition of sanctions for the behavior Plaintiff found to have committed was itself disability discrimination under contract embodying ADA rights and remedies. At the May 13, 2015, meeting MCC, through Koronkiewicz, intentionally discriminated against Plaintiff because of her disability by telling her she had to "learn to read body language" because "everybody can," inconsistent with the psychological limitations of autism, denying against her knowledge of Plaintiff's diagnosis on record and expressly acknowledged by her after the 2009 incident, that her autism substantially limited her in her everyday life functions. MCC intentionally discriminated against her because of disability by sanctioning her for behaving in an autistic manner by upholding the sanctions in August and September 2015. Since the sanctions remain in effect, the violation continues. All of the conduct alleged as disability violation and failure to accommodate,

even that before June 6, 2015, when the Complaint was filed is timely under Illinois contract law. In the alternative, any time-barred allegations of disability discrimination and failure to accommodate are evidence of actionable discrimination inside the limitations period.

**ANSWER:** To the extent the allegations in Paragraph 36 relate to Count II of Plaintiff's Third Amended Complaint, no response is required because Count II of Plaintiff's Third Amended Complaint was dismissed pursuant to the Court's September 1, 2020 Order. To the extent the allegations in Paragraph 36 relate to Count I of Plaintiff's Third Amended Complaint, the College denies the allegations in Paragraph 36.

37. MCC, Miksa, and Gray unlawfully retaliated against Plaintiff under § 1983 by directing MCC faculty and staff not to write recommendations for her in Oct. 2017, the same month as they became aware of the UICU disciplinary action based on her alleged improper failure to disclose the MCC discipline, and MCC and Unknown MCC Officials retaliated against her when they made false statements about the non-expungement policy at MCC and released (mis)information about her personally without a release.

**ANSWER:** Paragraph 37 relates exclusively to Count III of Plaintiff's Third Amended Complaint, which was dismissed pursuant to the Court's September 1, 2020 Order; therefore, no response is required.

38. As specified below, Plaintiff seeks permanent injunctive and declaratory relief for damages to her good name and reputation caused by defendants' actions in the form of an (a) order to defendants to have the findings and sanctions vacated, the records of the proceedings sealed, and (b) a declaration from the court that defendant's actions were unlawful. These unlawful actions detailed in this complaint have caused her irreparable harm for which she has no adequate remedy at law, and she will suffer more harm, absent requested relief than MCC and the named individual defendants would suffer by denying such relief, who would suffer no harm by such relief. The public interest would be served having plaintiff's name cleared and rights protected.

**ANSWER:** Paragraph 38 pleads a legal conclusion to which no response is required. To the extent a response is required, the College denies the allegations in Paragraph 38.

39. In all the Counts below Plaintiff realleges and incorporates all prior paragraphs by reference as though stated in each count.

**ANSWER:** Defendants hereby adopt and incorporate their answers to Paragraphs 1 through 38 here and for their answer to Paragraph 39.

## COUNT I

40. Plaintiff was discriminated against because of disability in violation of Illinois contract law when she was found to have violated the Code and sanctioned because of characteristic autistic behavior, and being told by Koronkiewicz, in effect, to stop being autistic or acting in the way autistic people do, and thereafter, under both contract and the ADA proper, by having the findings of Code violations and the impositions of sanctions upheld on appeal.

**ANSWER:** To the extent the allegations in Paragraph 40 relate to an alleged breach of contract claim, no response is required because Plaintiff's breach of contract claim (Count II) was dismissed pursuant to the Court's September 1, 2020 Order. To the extent the allegations in Paragraph 40 relate to Plaintiff's ADA claim, Paragraph 40 pleads a legal conclusion to which no response is required. To the extent a response is required, the College denies the allegations in Paragraph 40.

## DAMAGES

43. Plaintiff suffered emotional distress and humiliation because of these violations, substantial monetary loss in future income and educational prospects, in as well as irreparable injury for which there is no remedy at law to her reputation and good name.

**ANSWER:** Paragraph 43 pleads a legal conclusion to which no response is required. To the extent a response is required, the College denies the allegations in Paragraph 43.

Defendants deny each and every other allegation contained in Plaintiff's Third Amended Complaint that is not specifically admitted or addressed in this Answer. Defendants deny that Plaintiff is entitled to any relief sought in her Complaint.

17

## AFFIRMATIVE DEFENSES

By way of further answer, and for its affirmative defenses, Defendant MCHENRY COUNTY COLLEGE[3] states as follows:

### First Affirmative Defense

Plaintiff's original Complaint was not timely filed pursuant to Federal Rule of Civil Procedure 6(a)(3).

WHEREFORE, Defendant MCHENRY COUNTY COLLEGE[4] respectfully requests that this Honorable Court enter judgment in its favor and against Plaintiff, and for such other and further relief as this Court deems appropriate and just.

Respectfully submitted,

MCHENRY COUNTY COLLEGE, TONY MIKSA, CHRIS GRAY and UNKNOWN OFFICIALS OF MCHENRY COUNTY COLLEGE

By: s/ Emily P. Bothfeld
Emily P. Bothfeld
One of Defendants' Attorneys

Frank B. Garrett III (6192555)
fgarrett@robbins-schwartz.com
Emily P. Bothfeld (6320338)
ebothfeld@robbins-schwartz.com
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
55 West Monroe Street, Suite 800
Chicago, IL 60603
312.332.7760
312.332.7768 – Facsimile

---

[3] Defendants TONY MIKSA, CHRIS GRAY and UKNOWN MCHENRY COUNTY COLLEGE OFFICIALS assert no affirmative defenses because Plaintiff's claims against them were dismissed in their entirety pursuant to the Court's September 1, 2020 Order.

[4] Defendants TONY MIKSA, CHRIS GRAY and UNKNOWN MCHENRY COUNTY COLLEGE OFFICIALS do not seek that the Court enter judgment in their favor because Plaintiff's claims against them were dismissed in their entirety pursuant to the Court's September 1, 2020 Order.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **Defendants' Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint** with the Clerk of the Court using the CM/ECF system on this 18th day of September, 2020, which constitutes service on all counsel of record, registered filing users, pursuant to Fed. R. Civ. P. 5(b) and L.R. 59.

                                                                     s/ Emily P. Bothfeld
                                                                     Emily P. Bothfeld